**In re Arthur A. BERGER; Cheryl J. Berger, Debtors.**

**Arthur A. BERGER; Cheryl J. Berger, Appellants,**

v.

**A. Thomas POKELA, Chapter 12 Trustee, Appellee.**

No. 94–3301.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1995.

Decided July 28, 1995.

William J. Pfeiffer, Aberdeen, SD, for appellant.

A. Thomas Pokela, Sioux Falls, SD, for appellee.

Before MAGILL, Circuit Judge, and HEANEY and JOHN R. GIBSON, Senior Circuit Judges.

HEANEY, Senior Circuit Judge.

Arthur and Cheryl Berger filed for Chapter 12 farm reorganization in September 1987. Their debt adjustment plan provided that their unsecured creditors, with claims of $127,766.10, would receive a total of $16,927.83 to be paid in three installments at the end of 1989, 1990, and 1991. In April 1992 the Bergers filed their final account and report and sought discharge from all unsecured debts. The Chapter 12 Trustee filed an objection to the Bergers' discharge, claiming that the Bergers had not paid all the disposable income due to unsecured creditors, and moved to modify the confirmed plan to recognize post-confirmation equity realized by the Bergers in a tractor and in land on which a mortgage had been satisfied. After several hearings and presentation of written arguments, in January 1994 the bankruptcy court denied the Bergers' request for discharge and granted the Trustee's motion to modify the Chapter 12 plan to require additional payments to unsecured creditors. In August 1994 the district court affirmed the decision of the bankruptcy court. We affirm in part and reverse in part.

Both the Trustee and the Bergers agree that the resolution of this case turns on whether the Bergers had disposable income as of December 31, 1991, the end date of the Bergers' confirmed Chapter 12 debt adjustment plan. If there is no net disposable income as of that date, the Bergers will be deemed to have made all payments required under the plan and will be entitled to discharge. See 11 U.S.C. § 1228. If the court determines that payments under the plan have not been completed, the plan may be modified to increase the amount owed to unsecured creditors. See id. § 1229.

The Bergers raise three arguments: (1) various expenses, including race car expenses totaling $16,861, should have been deducted from the Bergers' available income when calculating net disposable income; (2) the plan should not be modified to include any equity the Bergers realized when Arthur Berger's mother satisfied the mortgage on their land; and (3) the plan should not be modified to include any equity the Bergers had in a tractor because it was purchased with life

insurance proceeds that the court ruled were exempt from the calculation of income.

Both parties agree that the Bergers' available income on December 31, 1991, the end of the disposable income payment period, was $88,657.31. They disagree about whether any disposable income remained after deducting necessary expenses. "Disposable income" is defined as "income which is received by the debtor and which is not reasonably necessary to be expended—(A) for the maintenance or support of the debtor or a dependent of the debtor; or (B) for the payment of expenditures necessary for the continuation, preservation, and operation of the debtor's business." 11 U.S.C. § 1225(b)(1)(A) and (B). We review the bankruptcy court's factual findings under a clearly erroneous standard, and review de novo all legal conclusions. *In re LeMaire,* 898 F.2d 1346, 1349 (8th Cir.1990).

■ The Bergers first claim that the $16,861 in race car expenses are allowable expenses that should have been deducted from their available income when calculating net disposable income. They argue that the race car was a necessary "outlet or release" for Arthur Berger and was listed among their assets when they filed for Chapter 12 reorganization, and the race car expenses should have been expected because Arthur Berger had raced for many years prior to the filing. This argument has no merit. The race car expenses clearly are not necessary for the Bergers' maintenance or support or for the continuation or operation of their farm. Thus the amounts expended on the car must be included as disposable income. We have also reviewed the other expenses claimed by the Bergers and find no clear error in the bankruptcy court's exclusion of them in calculating the Bergers' net disposable income.

■ The Bergers next argue that the equity they realized when Arthur Berger's mother filed a satisfaction of mortgage on their land should not be included as disposable income. When the Bergers filed for Chapter 12 reorganization, $45,000 was applied to the secured claim of Arthur Berger's parents. His father died in 1989, and in 1990 his mother Delores Berger released the $45,000 of secured debt. The Trustee and the Bergers have stipulated to $10,770.60 as the amount of equity in the homestead, an amount arrived at after deducting $30,000 for a homestead exemption and $4,229.40 paid by the Bergers during the plan period.

The Bergers claim that the mortgage was not "forgiven" but rather was satisfied in exchange for their obligation to take care of Delores Berger for the rest of her life. In the alternative, they argue that Delores Berger satisfied the mortgage without their knowledge and that they should not be forced to accept a gift that "hurts" them. We note in this regard that the Bergers have taken no steps to repudiate the gift.

Neither of these arguments is persuasive. A debtor's estate includes all property or income acquired after petitioning for Chapter 12 reorganization but before the closing of the case. 11 U.S.C. § 1207. The $10,770.60 equity in the land, which the Bergers obtained during the plan period, is properly included in the modified plan as an amount available to unsecured creditors.

■ Finally, the Trustee sought to include in the modified plan any equity the Bergers had in a 1984 Steiger tractor. The Bergers received $102,762.02 in life insurance proceeds from Aid Association for Lutherans (AAL), a fraternal benefit society, after the death of their son in an automobile accident in 1989. They used $25,000 of the proceeds as a downpayment on the tractor. The bankruptcy court determined that the proceeds were exempt from inclusion as income pursuant to S.D. Codified Laws § 58–37–68,[1] and that ruling is not challenged on appeal. The court also ruled, however, that the tractor purchased with the exempt proceeds was a non-exempt asset, so that any equity in the

---

1. This section reads:

Attachment or garnishment of benefits prohibited. No money or other benefit, charity, relief or aid to be paid, provided or rendered by any society, shall be liable to attachment, garnishment or other process, or to be seized, taken, appropriated or applied by any legal or equitable process or operation of law to pay any debt or liability of a member or beneficiary, or any other person who may have a right thereunder, either before or after payment by the society.

tractor should be included as income. We disagree.

Under South Dakota law the AAL proceeds are exempt from attachment by creditors. The Trustee argues that this constitutes a windfall to the Bergers. Had the money remained in a bank account, there is no question that the funds would remain beyond the reach of creditors. Here the Bergers used the proceeds for funeral costs; farm supplies, repairs, and expenses; and a downpayment on a tractor. *See* Debtors Exhibit PP. The bankruptcy court concluded that, although the expenditure on the tractor was an allowable expense because it was necessary for the operation of the Bergers' farm, the equity, if any, in the tractor should be deemed an amount available to creditors. We see no need to examine how the AAL benefits were spent, however, because that money is exempt in the first instance from the calculation of the Bergers' available income. Accordingly, we reverse the bankruptcy court's holding with respect to equity in the tractor.

Some observers may argue that the existence of exempt proceeds injects an element of unfairness into the relationship between debtors and their unsecured creditors because, absent section 58–37–68, the proceeds would be available to pay the creditors to the same extent that any other income or assets would be available. This result is generated by the statute itself, however. Section 58–37–68 specifically puts the proceeds beyond the reach of creditors, and we see no sound distinction between the exempt status of the proceeds themselves and that of the property bought with those proceeds.

We affirm the bankruptcy court's decision to deny discharge on the ground that disposable income remains to be paid to unsecured creditors, and to allow modification of the Chapter 12 plan to include the equity in the Bergers' land, but we reverse its holding that any equity in the tractor purchased with exempt proceeds should be available to creditors.