# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 96-1541

———————

In Re: Eugene Wayne Koch, &ast;
     Debra Marie Nelson-Koch, &ast;
                                &ast;
     Debtors. &ast;
                                &ast;

-------------------------------
                                &ast;
Barbara G. Stuart, United &ast;  Appeal from the United States
States Trustee, &ast;  District Court for the
                                &ast;  District of South Dakota.
     Appellant, &ast;
                                &ast;
     v. &ast;
                                &ast;
Eugene Wayne Koch, &ast;
Debra Marie Nelson-Koch, &ast;
                                &ast;
     Appellees. &ast;

———————

Submitted:  November 20, 1996

Filed:   March 28, 1997

———————

Before BEAM, LAY, and LOKEN, Circuit Judges.

———————

LOKEN, Circuit Judge.

We again consider the relationship between two provisions added to the Bankruptcy Code in 1984 -- the power to dismiss a Chapter 7 proceeding if debtor's discharge would result in "substantial abuse," 11 U.S.C. § 707(b), and the requirement that Chapter 13 debtors repay unsecured creditors with post-petition "disposable income," § 1325(b)(1)(B).  We have previously held that a Chapter 7 debtor's ability to fund a Chapter 13 plan "is the

primary factor to be considered in determining whether granting relief would be substantial abuse." In re Walton, 866 F.2d 981, 984-85 (8th Cir. 1989) (quotation omitted). In this case, the issue is whether post-petition worker's compensation benefits that are exempt under state law should be included as Chapter 13 disposable income in making this substantial abuse determination. Concluding that this would violate the exemption, the bankruptcy court denied the United States Trustee's motion to dismiss this Chapter 7 proceeding. The district court affirmed. See In re Koch, 187 B.R. 664 (D.S.D. 1995). The Trustee appeals. We reverse.

**I.**

Eugene and Debra Koch ("Debtors") filed a joint Chapter 7 petition listing $30,175 in unsecured debts, primarily consumer credit card debts and medical bills. Debtors have monthly expenses of $1,841 and monthly revenues of $3,284, including Mr. Koch's lifetime worker's compensation benefits of $1,343 per month, awarded in lieu of a lump-sum payment in 1985. Those benefits are "exempt from all claims of creditors" under South Dakota law and therefore are exempt from the claims of Chapter 7 creditors. See 11 U.S.C. § 522(b)(2)(A); S.D.C.L. § 62-4-42.[1]

This appeal concerns the Trustee's motion to dismiss Debtors' petition as a substantial abuse of Chapter 7. The Trustee reasons that, if Debtors petitioned for Chapter 13 relief, their disposable income, including Mr. Koch's worker's compensation benefits, would be $1,443 per month. That would permit them to repay $167% of their unsecured debt within three years under a Chapter 13 plan, an

---

[1]However, this exempt property is part of Debtors' bankruptcy estate. See In re Yonikus, 996 F.2d 866, 870 (7th Cir. 1993).

-2-

ability to repay creditors that makes this petition a "substantial abuse" of Chapter 7.  See Fonder v. U.S., 974 F.2d 996, 1000 (8th Cir. 1992) (ability to pay 89% in three years is substantial abuse); United States Trustee v. Harris, 960 F.2d 74, 77 (8th Cir. 1992) (ability to pay 156% is substantial abuse); Walton, 866 F.2d at 985 (ability to pay more than two thirds is substantial abuse).

Debtors respond that Mr. Koch's worker's compensation payments may not be included in calculating their hypothetical Chapter 13 disposable income.  Excluding those payments leaves Debtors less than $100 of Chapter 13 disposable income each month, an amount inadequate to repay a substantial portion of their unsecured debts over the three-year life of a Chapter 13 plan.  Thus, this petition is not a substantial abuse of Chapter 7.  The bankruptcy court agreed, concluding that exempt income, such as Mr. Koch's worker's compensation benefits, is not disposable income for purposes of Chapter 13.  The district court affirmed on the ground that our decision in In re Berger, 61 F.3d 624 (8th Cir. 1995), controls this issue.

**II.**

Although the parties ignored this jurisdictional issue, we must first decide whether the district court's order is final for purposes of 28 U.S.C. § 158(d).  We have traditionally considered three factors in determining when an order in a bankruptcy case is final:  "the extent to which (1) the order leaves the bankruptcy court nothing to do but execute the order; (2) the extent to which delay in obtaining review would prevent the aggrieved party from obtaining effective relief; (3) the extent to which a later reversal on that issue would require recommencement of the entire proceeding."  In re Olson, 730 F.2d 1109, 1109 (8th Cir. 1984)

(citations omitted).  Two of these factors weigh heavily in favor of appealability in this case.  First, deferring appellate review of the substantial abuse question while Debtors expend their inadequate resources in what turns out to be a futile Chapter 7 liquidation would certainly prevent the aggrieved party -- the trustee acting on behalf of creditors -- from obtaining effective relief.  Second, a later reversal would also force Debtors to recommence the entire proceeding under Chapter 13 to receive bankruptcy protection.  Like the two other circuits to consider the question, we conclude that orders denying § 707(b) dismissals are appealable under §158(d).  In re Kelly, 841 F.2d 908, 911 (9th Cir. 1988); Matter of Christian, 804 F.2d 46, 48 (3d Cir. 1986).

Admittedly, a district court order remanding the case to the bankruptcy court for further proceedings is not normally appealable.  See, e.g., In re Riggsby, 745 F.2d 1153, 1155 (7th Cir. 1984).  However, "finality for bankruptcy purposes is a complex subject . . . [and courts deciding appealability questions] must take into account the peculiar needs of the bankruptcy process."  In re Huebner, 986 F.2d 1222, 1223 (8th Cir. 1993); see also Cochrane v. Vaquero Invs., 76 F.3d 200, 203-04 (8th Cir. 1996).  For instance, contrary to this general rule, nearly every circuit has held that an order granting or denying an exemption is final for purposes of § 158(d).  See Huebner, 986 F.2d at 1223 (gathering cases).  Exemption orders are appealable because they "can and frequently do determine the entire course of the bankruptcy proceeding."  Matter of Barker, 768 F.2d 191, 193-94 (7th Cir. 1985).  In other words, it does not serve the needs of the bankruptcy process for the debtor and creditors to complete the entire process under a mistaken assumption as to the allocation of the "substantive rights" represented by exemptions.  Id. at 194.

Orders granting or denying dismissal for substantial abuse have an even more profound effect on the process. If they cannot be appealed, bankruptcy proceedings must "be completed before it can be determined whether they were proper in the first place." Christian, 804 F.2d at 48. Requiring trustees to complete Chapter 7 proceedings before appealing denial of their § 707(b) motions wastes debtor resources that should be used to pay creditors, and forces trustees and bankruptcy courts to expend their scare institutional resources on abusive Chapter 7 petitioners. Thus, "the policies of judicial efficiency and finality are best served" by allowing prompt appellate review of § 707(b) denials. Kelly, 841 F.2d at 911. It would indeed be ironic if parties could appeal each district court order granting or denying exempt status to a particular piece of property, only to find out at the conclusion of the bankruptcy process that these decisions were irrelevant because § 707(b) precludes any Chapter 7 relief.

## III.

Congress did not define "substantial abuse" in § 707(b). The legislative history is meager and contradictory.[2] In general, § 707(b) was intended to promote fairness to creditors, and thereby increase the flow of consumer credit, by "stemming the use of Chapter 7 relief by unneedy debtors." Walton, 866 F.2d at 983. In construing this term, Walton has resolved two primary issues. First, the substantial abuse inquiry focuses primarily on Debtors' ability to pay; indeed, substantial ability to pay creditors *standing alone* warrants dismissal of a Chapter 7 petition for substantial abuse. Second, ability to pay for § 707(b) purposes is

---

[2]Good discussions of the legislative history may be found in In re Grant, 51 B.R. 385, 389-92 (Bankr. N.D. Ohio 1985), and in In re Kelly, 841 F.2d at 914.

measured by evaluating Debtors' financial condition in a hypothetical Chapter 13 proceeding.[3]

Chapter 13 gives "an individual with regular income" the opportunity to preserve pre-petition assets through a three- to five- year plan funded primarily with that income.  See 11 U.S.C. § 109(e).  Prior to the 1984 amendments, a Chapter 13 plan could be confirmed if it paid unsecured creditors "not less than the amount" they would be paid in a Chapter 7 liquidation.  § 1325(a)(4).  Under that version of § 1325, courts consistently held that revenues from exempt sources, such as disability and social security benefits, are "income" that may be used to fund a Chapter 13 plan.  That ruling ensures that "social welfare recipients [are not] denied the benefits of Chapter 13 plans." Regan v. Ross, 691 F.2d 81, 85 (2d. Cir. 1982), citing H.R. Rep. No. 595, 95th Cong., 2d Sess. 312 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6296; see In re Howell, 4 B.R. 102, 106 (Bankr. M.D. Tenn. 1980).

---

[3]The Trustee urges us to divorce the substantial abuse analysis from Chapter 13 and focus on Debtors' absolute "ability to pay."  That would put all exemptions otherwise allowed in Chapter 7 at issue under § 707(b).  For example, under this approach, if a debtor's exempt homestead exceeded her unsecured debts, the court could dismiss her Chapter 7 petition as a substantial abuse because she has the ability to sell the house and pay creditors with its proceeds.  In a Chapter 13 proceeding, on the other hand, debtor's pre-petition assets retain whatever exempt status they may have, so the issue is limited to whether income received from exempt sources during the three-year life of a hypothetical Chapter 13 plan is "disposable income" and therefore evidence of substantial abuse. The Trustee cites no authority for her contrary approach, and we reject it.  This conclusion is not at odds with our decision in Fonder, 974 F.2d at 999.  In Fonder we held that debtor's ineligibility for Chapter 13 relief did not preclude dismissal of a Chapter 7 petition under § 707(b).  But we did not divorce "ability to pay" from Walton's hypothetical Chapter 13 analysis.

-6-

In the 1984 amendments, Congress imposed a new limitation on Chapter 13 relief -- if an unsecured creditor or trustee objects to confirmation, the Chapter 13 plan must "provide[] that all of the debtor's projected disposable income to be received [during the three-year plan] will be applied to make payments under the plan." § 1325(b)(1)(B). The statute defines "disposable income" as income received by the debtor that is not reasonably necessary to support the debtor, the debtor's dependents, or the debtor's business. § 1325(b)(2).

Under the amended statute, the exempt income question becomes something of a two-edged sword for prospective Chapter 13 debtors. They may need to include exempt income to qualify as "an individual with regular income." But exempt income not reasonably needed for support then becomes "disposable income" that *must* be paid to creditors. Despite this additional implication, courts since 1984 have continued to hold that revenues received from exempt sources during the life of a Chapter 13 plan are "income," the disposable portion of which must be paid to unsecured creditors if the plan is to be confirmed (or if a Chapter 13 discharge is to be awarded, the issue that arises when unexpected disposable income is received after confirmation). See In re Freeman, 86 F.3d 478, 480-81 (6th Cir. 1996) (tax refunds); In re Hagel, 184 B.R. 793, 796-97 (9th Cir. B.A.P. 1995) (social security benefits); In re Minor, 177 B.R. 576, 579 (Bankr. E.D. Tenn. 1995) (worker's compensation benefits); Watters v. McRoberts, 167 B.R. 146, 147 (S.D. Ill. 1994) (personal injury recovery); In re Schnabel, 153 B.R. 809, 815-16 (Bankr. N.D. Ill. 1993) (social security and pension benefits); In re Sassower, 76 B.R. 957, 960 (Bankr. S.D.N.Y. 1987) (pension, welfare, and unemployment benefits).

We agree with these decisions. Chapter 13 contains no language suggesting that exempt post-petition revenues are not Chapter 13 "income," and § 1325(b)(2) expressly defines "disposable income" to mean income not needed for debtor's support. Exemptions are less significant in protecting Chapter 13 debtors. In a Chapter 7 liquidation, exemptions ensure "that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge." Schnabel, 153 B.R. at 817, quoting H.R. Rep. No. 95-595, 1978 U.S.C.C.A.N. at 6087. In a Chapter 13 proceeding, on the other hand, debtor repays unsecured creditors primarily with post-petition "disposable income," income that is not reasonably necessary for support. Debtor's fresh start is not endangered by a requirement that income received during the life of the plan from otherwise exempt sources be included in the calculation of disposable income.

The district court rejected these cases as contrary to our decision in In re Berger. In Berger, the bankruptcy court held that life insurance proceeds received during the life of a Chapter 12 plan were not "income" under Chapter 12. Based upon that conclusion, *which was not challenged on appeal,* 61 F.3d at 626, we held that an asset purchased with those proceeds was not disposable income under § 1225(b)(1)(b), the Chapter 12 analog to § 1325(b). Thus, Berger did not consider the critical issue in this case -- whether exempt revenues are "income" under Chapter 12 or Chapter 13 -- and Berger is not controlling.[4]

A recent decision not cited by the parties also rejected this line of authority, but on the ground that treating exempt income as

_____

[4]Other decisions in this circuit conflict with the bankruptcy court's unappealed ruling in Berger. See In re Martin, 130 B.R. 951, 966 (Bankr. N.D. Iowa 1991), followed in Agribank, FCB v. Honey, 167 B.R. 540, 544 (W.D. Mo. 1994).

-8-

Chapter 13 disposable income violates the mandate in § 522(c) that exempt property "is not liable" for any pre-petition debt.  In re Ferretti. 203 B.R. 796, 800 (Bankr. S.D. Fla. 1996).  We disagree.  Including exempt income in disposable income does not make exempt property "liable" to Chapter 13 unsecured creditors.  Chapter 13 relief is at the option of the debtor.  See § 1307(a), (b).  The disposable income limitation in § 1325(b) simply defines the terms upon which Congress has made the benefits of Chapter 13 available.

Finally, Debtors suggest that Mr. Koch should not be penalized for taking his worker's compensation benefits as a lifelong stream of periodic payments, rather than as a lump sum.  The short answer is that the bankruptcy court must deal with Debtors' financial affairs as it finds them.  Moreover, it may not be correct to assume that the portion of a pre-petition lump sum benefit that is allocable to lost earnings during the life of a Chapter 13 plan will escape inclusion in the debtor's disposable income.

## III.

Having determined that Debtors' worker's compensation benefits would be included in "disposable income" if they sought Chapter 13 relief, the only remaining question is whether such benefits should nonetheless be excluded from the *hypothetical* Chapter 13 analysis that underlies a substantial abuse determination under Walton.  Debtors suggest two policy considerations that give us pause.  First, they argue that, even if Mr. Koch *could* include his worker's compensation benefits in a voluntary Chapter 13 plan, it violates the South Dakota exemption to forcibly include these benefits in a hypothetical Chapter 13 analysis under § 707(b). Second, on a more practical level, Debtors suggest that § 707(b) dismissals in cases such as this will leave debtors no avenue of bankruptcy relief,

because they have no non-exempt assets worth protecting in a Chapter 13 proceeding.

On balance, we conclude these arguments are unpersuasive. Chapter 13 relief remains wholly voluntary, and debtors whose Chapter 7 petitions are dismissed for substantial abuse are not compelled to file for Chapter 13 relief. Congress is free to limit Chapter 7 protection to truly needy debtors who cannot fund a Chapter 13 plan with exempt and non-exempt income. We conclude that Congress did just that when it enacted § 707(b) and § 1325(b) in the 1984 amendments. As the court said in In re Morse, 164 B.R. 651, 656 (Bankr. E.D. Wash. 1994):

> [Section] 1325(b) balances the interests of debtors and creditors by independently limiting a debtor's ability to shelter income from exempt sources away from his creditors when he otherwise has sufficient income to meet his basic needs. Section 707(b), by incorporating a disposable income test, similarly balances the interests of debtors and creditors by empowering courts to dismiss cases filed by non-needy debtors for substantial abuse "if a debtor can meet his debts without difficulty as they come due." S.Rep. No. 65, 98th Cong., 1st Sess. 53, 54 (1983). . . . While the court does not dispute that debtors are entitled to any exemption which they may validly claim, the ability to claim an exemption is an independent issue from whether debtors have the ability to repay their debts.

**IV.**

The final decision on a § 707(b) motion to dismiss should be made initially by the bankruptcy court. Accordingly, the judgment of the district court is reversed and the case is remanded with instructions to remand to the bankruptcy court for further consideration of the Trustee's motion consistent with this opinion.

LAY, Circuit Judge, dissenting.

I respectfully dissent. Because there is no final order of the district court we lack jurisdiction to address the merits of this appeal.

The district court affirmed the bankruptcy court's denial of the trustee's motion to dismiss and remanded the case for further proceedings. The order is interlocutory and not appealable under 28 U.S.C. § 158(d). The parties did not seek certification from the district court under 28 U.S.C. § 1292. It should also be clear that the order is not appealable under the collateral order doctrine. If necessary, the issue involved here will remain reviewable at the conclusion of the case.

The majority justifies an exception to the final order doctrine because the parties may expend resources in what might later become a "futile" effort. If this were the proper test, every interlocutory ruling by a district court that an appellate court might regard as erroneous could be immediately appealed. Thus, if an appellate court would believe the district court wrongly denied a Rule 12(b)(6) motion, the court could entertain the appeal on the basis of futility and practicality. Such an approach ignores our disfavor of piecemeal appeals.

By relying on In re Christian, 804 F.2d 46 (3d Cir. 1986), the majority rejects the final order rule of this circuit and adopts an approach rejected by most other circuits. In Christian, the Third Circuit considered whether it had jurisdiction to consider a creditor's appeal from a district court order that affirmed the bankruptcy court's denial of the creditors' motion to dismiss the debtor's bankruptcy petition under 11 U.S.C. § 707(b). The court concluded it had jurisdiction, reasoning that "[i]f the order . . .

is not now appealable the entire bankruptcy proceedings must be completed before it can be determined whether they were proper in the first place." Id. at 48.

The Christian court expressly relied on In re Marin Motor Oil, Inc., 689 F.2d 445 (3d Cir. 1982). In Marin, the Third Circuit held that "when the bankruptcy court issues what is indisputably a final order, and the district court issues an order affirming or reversing, the district court's order is also a final order." Id. at 449. The Marin court therefore concluded it had jurisdiction to review a district court's order that reversed the bankruptcy court's denial of the motion of the creditors committee to intervene. Id.

However, in In re Riggsby, the Seventh Circuit analyzed the risk and harm of piecemeal appeals, and rejected Marin, adopting the contrary "very sensibl[e]" holding of other circuits "that remands by the district court to the bankruptcy judge are not appealable . . . where the bankruptcy judge [is the decision-maker]." 745 F.2d 1153, 1155 (7th Cir. 1984). Judge Posner in Riggsby appropriately noted this court's decision in In re Hansen, 702 F.2d 728 (8th Cir. 1983) (per curiam), where we held we had no jurisdiction to consider an appeal of the district court's decision that reversed the bankruptcy court's dismissal of a secured creditor's complaint against the debtor. See also In re Vekco, Inc., 792 F.2d 744 (8th Cir. 1986) (holding the district court's decision was not a final, appealable decision in a Chapter 11 case where the decision reversed the bankruptcy court's order that had disposed of the case).

The Fifth Circuit considered the question of a remand order's appealability in In re Greene County Hosp., 835 F.2d 589 (5th Cir. 1988). That court rejected Marin's rationale and followed Riggsby

-12-

and held that a district court's order affirming the bankruptcy court's conclusion that it had subject matter jurisdiction was not a final order. Id. at 594-96.

Other circuits have also rejected the Third Circuit approach that the majority adopts today. Compare In re St. Charles Preservation Investors, Ltd., 916 F.2d 727, 729 (D.C. Cir. 1990) (adopting Riggsby and holding that "a district court order remanding a case to bankruptcy court for significant further proceedings is not final in the 28 U.S.C. § 158(d) context"); In re Dixie Broadcasting, Inc., 871 F.2d 1023, 1028 (11th Cir. 1989) (questioning Christian and Marin and noting that "[t]his Circuit has consistently held that a district court order remanding the case to the bankruptcy court is not a final decision for purposes of appeal."); In re Gould & Eberhardt Gear Machinery Corp., 852 F.2d 26, 29 & n.2 (expressly rejecting Marin and adopting Riggsby to hold that "when a district court remands a matter to the bankruptcy court for significant further proceedings, there is no final order for the purposes of § 158(d) and the court of appeals lacks jurisdiction"); Bowers v. Connecticut Nat'l Bank, 847 F.2d 1019, 1022 (2d Cir. 1988) (following Riggsby and finding no appellate jurisdiction); and In re Commercial Contractors, Inc., 771 F.2d 1373, 1375 (10th Cir. 1985) (rejecting Marin and adopting Riggsby in concluding the district court's order reversing the bankruptcy court and remanding for further proceedings is not a final, appealable order under § 158(d)); with In re Carolina Motor Express, Inc., 949 F.2d 107, 108 n.1 (4th Cir. 1991) (adopting Marin approach), rev'd on other grounds sub nom., Reiter v. Cooper, 507 U.S. 258 (1993); In re Sambo's Restaurants, Inc., 754 F.2d 811, 814-15 (9th Cir. 1985) (same); and cf., In re Gardner, 810 F.2d 87, 90-92 (6th Cir. 1987) (finding jurisdiction after opining "the particular circumstance[]" of addressing a purely legal question

that would determine the outcome removed the case from the <u>Riggsby</u> line of cases).

We should adhere to the reasoned approach of most of our sister circuits and recognize that a district court's order remanding a case to the bankruptcy court for further proceedings beyond mere ministerial duties does not constitute a final order.[5] There is nothing final in the district court's returning the case to the bankruptcy court for extensive further proceedings, and at least we should not in reaching a contrary conclusion adopt a standard reasonably denounced by the majority of circuits. Nor does this case pose an issue whose resolution will answer what <u>actually</u> belongs in a bankruptcy estate, since the ultimate question raised to us is whether the Debtors' worker's compensation benefits should "be excluded from the <u>hypothetical</u> Chapter 13 analysis that underlies a substantial abuse determination." <u>Ante</u>, at 10. In short, the question is only whether the Debtors' worker's compensation benefits would preclude his use of Chapter 7,[6] and in order for us to consider this question on appeal, as

---

[5]The majority today quite correctly declines to rely on <u>In re Bestmann</u>, 720 F.2d 484 (8th Cir. 1983). There, this court discussed <u>Marin</u> approvingly in finding appellate jurisdiction over the district court's refusal to consider an appeal from the bankruptcy court. <u>Id.</u> at 486. But the district court there had erroneously concluded that it lacked subject matter jurisdiction to consider the appeal. In <u>Bestmann</u> we expressly noted that were we to decline to exercise appellate jurisdiction, the only issue before us then--whether the district court had jurisdiction to consider the appeal--would never receive appellate review. <u>Id.</u> <u>Bestmann</u> should not be read any broader than its limited holding, especially in light of <u>Hansen</u> and <u>Vekco</u>. <u>See</u> <u>supra</u> at 2-3.

[6]In this regard the present case is distinguished from <u>In re Huebner</u>, 986 F.2d 1222 (8th Cir. 1993). There, we held that an order denying a debtor's claimed exemption is final under § 158(d), after recognizing the district court's order would <u>actually</u> place the purportedly exempt assets into the bankruptcy estate. I note, however, that even in <u>Huebner</u> we cautioned that we were not abandoning "our prior decisions holding that district court orders remanding to the bankruptcy court are seldom final." <u>Id.</u> at 1224. Today's decision tosses that caution aside.

-14-

Judge Goldberg put it, "the game must really be over." <u>Greene County Hospital</u>, 835 F.2d at 595.

Until today, that we may deem it feasible or practical to review a district court order has not granted us appellate jurisdiction. By embracing the Third Circuit's oft criticized approach, albeit with good intentions of convenience and economy, we now inevitably invite the inconvenient and costly piecemeal appeals our insistence on finality has heretofore proscribed.

Certainly in some cases appellate judges may feel it better to review the matter and get it over with. <u>See e.g.</u>, <u>In re Kelly</u>, 841 F.2d 908, 911 (9th Cir. 1988) (concluding that because "legal issues predominate" the questions raised on appeal, "judicial efficiency and finality are best served" by exercising appellate jurisdiction). This fosters only passing convenience and is far from the law. If the courts do not follow reasoned precedent governing basic jurisdictional principles, we can not expect lawyers and litigants to do so. We should strictly apply our jurisdictional rules and dismiss the appeal for want of jurisdiction. Today's decision is most unfortunate.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.