In re HAYES BANKRUPTCY.

MAQUOKETA STATE BANK, Appellant,

v.

Robert C. HAYES and Andrea
Hayes, Appellees.

Civ. No. C97–1006 MJM.

United States District Court,
N.D. Iowa,
Eastern Division.

March 12, 1998.

**58**

Eric W. Lam, Moyer & Bergman, P.L.C., Cedar Rapids, IA, for Maquoketa State Bank.

Brian W. Peters, Naylor Hoover Peters & Blair, Dubuque, IA, for Robert C. and Andrea Hayes.

*Memorandum Opinion and Order*

MELLOY, Chief Judge.

### I. Introduction

The Bankruptcy Court for the Northern District of Iowa (Honorable Paul Kilburg, Judge) denied Maquoketa State Bank's (the "Bank's") motion to convert the Hayes's bankruptcy to a Chapter 7 case. The Bank sought that motion in order to secure the appointment of a Chapter 7 trustee, who could avoid the mortgage on the Hayes's residence. The bankruptcy court explained its reasoning in a detailed order, and clarified its reasoning in a subsequent order denying the bank's motion to reconsider.

The bank then appealed to this Court, either under 28 U.S.C. § 158(a)(1) or § 158(a)(3). The distinction is significant, since § 158(a)(1) provides that this Court "shall have jurisdiction to hear appeals" only from "final judgments, orders, and decrees" of the bankruptcy court, while § 158(a)(3) allows this Court to hear appeals "from [all] interlocutory orders and decrees" of the bankruptcy court, subject only to this Court's decision to grant leave to appeal. *See* 28 U.S.C. § 158(a).

In the initial briefing to this Court, neither party briefed the question of whether the bank's appeal was properly taken under § 158(a)(1) as an appeal of a final order, or whether the bank's appeal should nonetheless be heard pursuant to § 158(a)(3). Accordingly, this Court ordered the parties to provide supplemental briefing on that question. *See* Doc. # 6.

Both parties have now submitted briefs addressing that question. The bank contends that the bankruptcy court's order is a "final" order under § 158(a)(1) and, even if it

is not, that this Court should nevertheless entertain its appeal. The Hayeses contend that the bankruptcy court's order is not a "final" order, and that this Court should refrain from entertaining a § 158(a)(3) appeal. The matter is fully submitted and ready for decision.

### II. Facts

As the bankruptcy court noted, the timing of the various transactions at issue in this case is "odd." *See Order Re Objection to Exemption Claim and Motion to Convert*, at 8 (hereinafter "Order"). The Hayeses first filed a bankruptcy petition on Friday, May 31, 1996, which was promptly returned to them by the bankruptcy clerk because of an unspecified "error in execution." *Order*, at 2. They filed a proper bankruptcy petition on June 3, 1996.

Also on May 31, 1996, the Hayeses sold one home, located on Country Club Drive in Maquoketa, Iowa (hereinafter the "Country Club"), and bought another, located in Baldwin, Iowa (hereinafter the "Baldwin property"). The financial details of this sale and purchase are fairly straightforward, and may be summarized briefly.

Before its sale on May 31, Mark and Debra Edwards held a mortgage on the Hayes's Country Club home. With some of the proceeds from the sale of the Country Club, the Hayeses paid the Edwards around $60,000 to release the Country Club mortgage. The Hayeses used the rest of the Country Club proceeds to pay $80,000 toward their new Baldwin property. The remainder of the Baldwin property purchase price was provided by the Edwards, who lent the Hayeses around $35,000 in exchange for a mortgage on the Baldwin property. Documents evidencing these transactions, and recording the Edwards's mortgage on the Baldwin property, were filed on June 3, 1996. The evident aim of all these transactions was to improve the Edwards's position as creditors of the Hayeses by giving the Edwards a purchase-money mortgage on the Baldwin property. Under Iowa law, a properly recorded purchase-money mortgage has a kind of super-priority akin to that of a purchase money security interest under the Uniform Commercial Code. *See* IOWA Code § 654.12B.

Maquoketa State Bank is a general creditor of Hayeses. The bank claims that if the mortgage to Edwards on the Baldwin property is avoided, a portion of the homestead property would be available to pay the claims of unsecured creditors. The exact amount available to pay creditors is somewhat disputed. The purchase price of the Baldwin property was $80,750. Judge Kilburg found that up to $54,566.33 of that amount would be exempt as the "carry over" exemption from the debtors' prior homestead. However, the bank argues that the size of the homestead exceeds the statutory allowance of .5 acres and, consequently, there may be somewhat more available to pay creditors once the property of platted and the debtors actually designate the .5 acre homestead that they are allowed to claim. Again, this assumes that the mortgage to the Edwards is avoided.

The bank claimed that the debtors had acted in bad faith and that the case should be converted to Chapter 7, so that a Chapter 7 Trustee could be appointed to examine the debtors' conduct, marshal assets and void the Edwards' mortgage. The bankruptcy court denied the motion to convert and this appeal followed.

### III. Discussion

#### A. An Overview of District Court Appellate Jurisdiction over the Orders of Bankruptcy Courts

As mentioned above, and leaving aside the issue of extraordinary relief, see In re Olson, 20 B.R. 206 (D.Neb.1982)(Beam, J.); Tripati v. U.S. Bankruptcy Court for the Eastern District of Texas, 180 B.R. 160 (E.D.Tex.1995); Keller v. Blinder, 135 B.R. 892 (D.Co.1991), a litigant has the right to appeal final orders and decrees of the bankruptcy court, see § 158(a)(1), and may seek leave to appeal interlocutory (which is to say, non-final) orders and decrees. See § 158(a)(3). Whether or not to grant leave to appeal a non-final order is wholly within the discretion of the district court. See U.S. Trustee v. Vance, 189 B.R. 386 (W.D.Va. 1995); QF Finance Ltd. v. National Indemnity Corp., 180 B.R. 510 (N.D.Ill.1995); In re American Freight System, Inc., 153 B.R. 316 (D.Kan.1993); see also 28 U.S.C. § 158(a)(3); compare 28 U.S.C. § 1292(b) (standards for interlocutory review of district court orders by circuit courts); see also White v. Nix, 43 F.3d 374 (8th Cir.1994)(holding that circuit court cannot entertain interlocutory appeal when standards of § 1292(b) are not met); In the Matter of Morse Electric Co., Inc., 805 F.2d 262, 264 (7th Cir.1986)("[D]istrict courts may elect to hear appeals from bankruptcy judges' interlocutory orders ... while only 'final' orders of district judges are appealable to the court of appeals under § 158(d).").

While some district courts have read the requirements of 28 U.S.C. § 1292(b) into § 158(a)(3), see, e.g., IBI Security Service, Inc. v. National Westminster Bank USA, 174 B.R. 664 (E.D.N.Y.1994), that approach seems to arise from a felt necessity to impose an analytical structure on the § 158(a)(3) inquiry and to discourage pell-mell appeals. Nothing in the text of § 158(a)(3) indicates a limit to the district court's discretion. Perhaps more importantly, nothing in the statutory or constitutional relationship between district and bankruptcy courts reveals any reason why a district court must decline review when the strict requirements of § 1292(b) are not met. Since the bankruptcy court is a "unit of the district court," see 28 U.S.C. § 151, its adjudicatory authority flows from that of the district court, and the district court may review decisions of the bankruptcy court as freely as it may review its own decisions. Cf. Lindh v. Murphy, 96 F.3d 856, 870 (7th Cir.1996)(en banc), rev'd on other grounds, —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Nevertheless, district courts exercise this discretionary power of review with care, and with an eye toward safeguarding the bankruptcy court's role as the initial and in some respects primary forum for the adjudication of bankruptcy disputes. It is therefore very much in the interest of those seeking § 158(a) review to characterize the order appealed from as "final." See 1 Collier on Bankruptcy, ¶ 5.07[1][a] (Matthew Bender 15th Ed. Revised 1996). The evident next question here is whether an order denying a motion to convert is "final" for § 158(a)(1) purposes.

### B. Finality of Bankruptcy Orders in the Eight Circuit

Both parties rely on *In re Koch*, 109 F.3d 1285 (8th Cir.1997) for the proposition that a 3–step test determines whether a bankruptcy court's order is "final" for § 158(a)(1) purposes. *See Supplemental Brief of Appellees Robert C. Hayes and Andrea Hayes*, Doc. # 8, at 1 (asserting that "[t]he basis for finality under 28 U.S.C. § 158(a)(1)" is determined by the *Koch* test); *Supplemental Brief of Appellant Maquoketa State Bank*, at 2 (asserting that "the Eighth Circuit has adopted a three step process for the determining the finality of a bankruptcy order" and citing *Koch*).

■ This reliance is technically misplaced. The issue in *Koch* was whether the *district court's* order, entered pursuant to § 158(a)[1], was final for the purposes of *circuit court* review under § 158(d). *See Koch*, 109 F.3d at 1287 ("Although the parties ignored this jurisdictional issue, we must first decide whether the district court's order is final for purposes of 28 U.S.C. § 158(d).")[2]. Nevertheless, the Eighth Circuit has held that the same three-part test applied in *Koch* also generally applies to the question of whether a bankruptcy court's order is final for purposes of district court review. *See, e.g., Lewis v. FHA*, 992 F.2d 767 (8th Cir.1993); *In re Huebner*, 986 F.2d 1222, 1223 (8th Cir.1993); *In re Olson*, 730 F.2d 1109 (8th Cir.1984). Under that test, whether a bankruptcy court's order is final depends upon a consideration of the following:

(1) The extent to which the order leaves the bankruptcy court nothing to do but execute the order;

(2) The extent to which delay in obtaining review would prevent the aggrieved party from obtaining effective relief; and

(3) The extent to which reversal would require recommencement of the entire proceeding.

*See, e.g., Olson*, 730 F.2d at 1109; *In re Apex Oil Co.*, 884 F.2d 343 (8th Cir.1989); *cf. Allen v. Old National Bank of Washington*, 896 F.2d 416, 418 (9th Cir.1990)(holding that bankruptcy order is final when it "finally determines the discrete matter to which it was addressed" and "determines and seriously affects substantial rights [and] can cause irreparable harm if the losing party must wait until bankruptcy proceedings terminate before appealing.").

■ The parties disagree over the meaning of the first step in this test. The Hayeses believe that whether the bankruptcy court has anything left to do but execute the order should be judged in reference to the whole case, while the bank believes that the important question is whether the bankruptcy court has anything left to do with respect to the particular controversy that was resolved by the order. *See Supplemental ... Hayes*, at 1 ("The decision not to convert leaves the Bankruptcy Court with substantial remaining business, specifically the confirmation of the Debtors' plan."); *Supplemental ... Bank*, at 2 ("[T]here is nothing left for the Bankruptcy Court to do in regard[ ] to the mortgage avoidance issue[.]").

This Court agrees with the bank that whether the bankruptcy court has anything left to do but execute its order should be judged by reference to the particular dispute that was resolved by that court's order, not by reference to the entire bankruptcy proceeding. Eighth Circuit precedent supports that view. In *Olson*, for example, the Eighth Circuit held that an order was final in part because "it is clear that the order *finally resolves the issue* of PCA's claim to priority over TOE.... Nothing remains except for the trustee to execute this order." *Olson*, 730 F.2d at 1110 (emphasis added). In *Apex*

---

**1.** Neither the Eighth Circuit's opinion in *Koch* nor the district court's opinion indicates whether the appeal was taken pursuant to § 158(a)(1) or § 158(a)(3). *See In re Koch*, 187 B.R. 664 (D.S.D.1995).

**2.** Section 158(d) provides that "[t]he courts of appeals shall have jurisdiction of appeals from

all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of [§ 158]." *See generally Connecticut National Bank v. Germain*, 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (explaining the structure of § 158(d) review); *In re G.S.F. Corp.*, 938 F.2d 1467 (1st Cir.1991)(same).

*Oil*, the Eighth Circuit held that an order denying certain relief from the bankruptcy code's automatic stay provision "leaves nothing more for the court to do beyond the ministerial tasks necessary for execution," 884 F.2d at 347, which must mean that the bankruptcy court had nothing left to do with respect to the request for relief from the automatic stay; surely the order denying relief did not wind up the entire case.

Moreover, there is a general consensus among courts and commentators that "finality" for bankruptcy purposes is judged by reference to individual disputes, not by reference to the whole case. As then-Judge (now Justice) Breyer explained, "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case[.]" *In re Saco Local Development Corp.*, 711 F.2d 441, 444 (1st Cir.1983); *see also In re Martin Bros. Toolmakers, Inc.*, 796 F.2d 1435, 1437–1438 (11th Cir.1986); *In re Johns–Manville Corp.*, 824 F.2d 176, 179 (2nd Cir.1987); *In re American Cabinets & Woodcrafting Corp.*, 159 B.R. 969, 971 (M.D.Fl.1993); *see generally* 1 *Collier's on Bankruptcy* ¶ 5.07[1][b].

■ The first step in the Eighth Circuit's test is a good way of deciding whether a bankruptcy court's order has "finally dispose[d]" of a particular dispute. If nothing is left for the bankruptcy court to do except execute its order, the bankruptcy court's fact-finding and legal analysis with respect to that dispute is most likely at an end. As Judge Posner recently cautioned, however, not every bankruptcy order that resolves a particular dispute with the larger bankruptcy proceeding is appealable. *See In the Matter of Lopez*, 116 F.3d 1191 (7th Cir.1997); *see also In re Delta Services*, 782 F.2d 1267 (5th Cir.1986). The crucial question is what kind of dispute has been resolved.

Orders that finally resolve disputes concerning what the debtor owes or owns, or who gets what from the bankruptcy estate— for example, whether a creditor has a claim against the bankruptcy estate, whether a person is liable to the bankruptcy estate, or whether certain property is part of the bank-

ruptcy estate—are final, since those disputes go to the core of the bankruptcy process, which is to collect and distribute the assets of the debtor in an orderly and statutorily pre-determined manner. *See, e.g., Huebner*, 986 F.2d at 1223 ("[D]ecisions about the status of exempt property can and do determine the entire course of the bankruptcy proceeding because they involve disputes over what belongs in the bankrupt estate"), *quoting In re Barker*, 768 F.2d 191, 193 (7th Cir.1985). These are the kinds of decisions that also threaten to "prevent the aggrieved party from obtaining effective relief," *see Olson*, 730 F.2d at 1109, since assets improperly excluded from the estate might be gone by the time any error is corrected, and also might "require recommencement of the entire [bankruptcy] proceeding." *Olson*, 730 F.2d at 1109; *see also Allen*, 896 F.2d at 418 (final order is one that "determines and seriously affects substantial rights[.]").

By contrast, orders that resolve matters other than the assets or liabilities of the estate, or the relative priority of the estate's creditors—for example, whether to convert a proceeding to Chapter 7, *see Stewart v. Kutner*, 656 F.2d 1107 (5th Unit A Cir.1981), or whether to confirm a Chapter 11 plan, *see In re Pleasant Woods Ltd. Partnership*, 2 F.3d 837 (8th Cir.1993), or whether to extend time for filing objections to discharge, *see In re Gaines*, 932 F.2d 729 (8th Cir.1991)—are not final. *See, e.g., In re Rebeor*, 89 B.R. 314 (Bankr.N.D.N.Y.1988)(incidental procedural matters not immediately appealable). Those orders pose much less risk of leaving the bankruptcy estate with unwarranted assets or liabilities, or of denying creditors their lawful rights.

### C. *The Finality of the Order in this Case*

■ Given the understanding of finality developed above, it is clear that the bankruptcy court's denial of the motion to convert this case from Chapter 13 to Chapter 7 is not a final order for purposes of § 158(a)(1). *See Stewart v. Kutner*, 656 F.2d 1107 (5th Cir. Unit A 1981); *In re Hebb*, 53 B.R. 1003, 1005 (D.Md.1985); *In re Klein/Ray Broadcasting*, 100 B.R. 509 (9th Cir. BAP 1987)(holding denial of motion to convert from Chapter 11

62

to Chapter 7 is interlocutory). An order denying a motion to convert does not determine the amount of a creditor's claim against the bankruptcy estate, or determine the relative priority of creditors. In fact, whether a case proceeds in Chapter 13 or Chapter 7 should not affect a creditor's recovery, since a Chapter 13 debt payment plan "must provide for [unsecured creditors] to receive at least as much as they would obtain in a[n] hypothetical chapter 7 liquidation case," while "secured creditor[s][are] entitled to retain [their] lien[s] and receive payments equaling the present value of the secured claim[.]" 1 *Collier on Bankruptcy* ¶ 1.03[6]. While it is true that several courts have held that an order *granting* a motion to convert a case is appealable, since such an order denies the debtor his substantive right to proceed under Chapter 13 (with the attendant advantage of not being forced to liquidate his property), *see, e.g., In re Rebeor,* 89 B.R. 314 (Bankr.N.D.N.Y.1988); *In re Firstcent Shopping Center, Inc.,* 141 B.R. 546 (S.D.N.Y. 1992), similar reasoning is not applicable here, since proceeding in Chapter 13 does not *ex proprio vigore* deny the creditors anything except the power to collect their debts from the debtor's property instead of his future income. To the extent that power is important, it is safeguarded by the creditors's ability to move for conversion under 11 U.S.C. § 1307 if recovery from future income becomes troublesome. Even under the liberal notions of finality that prevail in bankruptcy law, *see Lopez,* 116 F.3d at 1193, an order providing that a case shall proceed under Chapter 13 rather than under Chapter 7 is not a final order.

### D. *The Collateral Order Doctrine*

■ Even if the order denying the motion to convert is not a final order, this Court still must consider whether it may nevertheless be treated as final for § 158(a)(1) purposes under the collateral order doctrine. Under that doctrine, an order is appealable when it "conclusively determine[s] [a] disputed question, resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal from final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458,

57 L.Ed.2d 351 (1978); 1 *Collier on Bankruptcy* ¶ 5.07[3]. For the reasons explained above, an order denying a motion to convert a case from Chapter 13 does not "resolve an important issue," and so is not appealable under the collateral order doctrine.

### E. *Discretionary Review*

■ As explained above, this Court may exercise a wholly discretionary power of review over interlocutory orders of the bankruptcy court. Many courts, seeking to impose a structure on this discretionary review, have held that it should be exercised only when the interlocutory order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and when "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *See* 28 U.S.C. § 1292(b); *see generally IBI Security Service, supra; Pileckas v. Marcucio,* 156 B.R. 721 (N.D.N.Y.1993); *Trustee of Jartran, Inc. v. Winston & Strawn,* 208 B.R. 898 (N.D.Ill. 1997); *In re Lykes Bros. Steamship Co., Inc.,* 200 B.R. 933 (M.D.Fla.1996).

I find that this is not a case in which discretionary review should be granted. Once a Chapter 13 Plan is confirmed, the bank can then appeal the confirmation of such a Plan with a fully developed record as to the priority of creditors, payment of claims, and plan feasibility. One of the grounds upon which Judge Kilburg made his decision is: "Even if a trustee could avoid the mortgage, the estate and creditors would not receive much, if any, benefit." It is virtually impossible for this Court to conclude that the trial judge is "clearly erroneous" in making that conclusion without the fully developed record from the Chapter 13 confirmation process. Likewise, the debtors in this case have argued that even if the mortgage is avoided, that there are a number of priority creditors, such as taxing authorities, which would have first claim to any unsecured proceeds. Whether those claims may or may not be allowed, their relative priority to the claim of Maquoketa State Bank, and how those claims are treated under a Plan are all relevant to the issue of

whether conversion to Chapter 7 is appropriate in this case.

## ORDER

IT IS THEREFORE ORDERED that this Court concludes that the Order appealed from in this case is not a final order. In addition, this is not an appropriate case over which the Court should exercise discretionary review.