**In re Brett Alan MAKINEN, Debtor.**

**Bankruptcy No. 99–41396.**

United States Bankruptcy Court,
D. Minnesota.

Oct. 1, 1999.

Michael J. Fadlovich, Assistant United States Trustee, Minneapolis, Minnesota, for movant.

Craig W. Andresen, Bloomington, Minnesota, for debtor.

## ORDER OF DISMISSAL

ROBERT J. KRESSEL, Bankruptcy Judge.

This case came on for hearing on the motion of the United States Trustee for an order of dismissal pursuant to 11 U.S.C. § 707(b). Michael R. Fadlovich appeared on behalf of Barbara G. Stuart, the United States Trustee, and Craig Andresen appeared on behalf of the debtor.

This court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157(b)(1) and § 1334, and Local Rule 1070–1. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1).

## BACKGROUND

The debtor, Brett Alan Makinen, is a self-employed exotic dancer. According to his 1997 and 1998 income tax returns, his

annual income from this trade is between $12,000 and $14,000.

On January 4, 1999, Makinen's mother died. Prudential Life Insurance Company paid $47,293.01 to Makinen as the beneficiary of a life insurance policy on his mother's life. The funds were deposited into a Prudential Alliance Account. Makinen has the exclusive right to the funds in the account.

When Makinen received the proceeds of his mother's insurance policy, he used $5,650.90 to pay for his mother's funeral, $740 to buy a diamond ring for his fiancee, also an exotic dancer, purchased a computer, monitor and printer for $2,472.47 to use in promoting his fiancee's exotic dancing career, and paid $1,170 for custom t-shirts for her business. He spent $750 on living expenses.

Makinen has a non-dischargeable tax obligation to the IRS, in the amount of $482. Makinen also has a secured claim which he intends to reaffirm, in the amount of $1,356, secured by a 1989 Mitsubishi Montero. Makinen's total dischargeable unsecured debt is $9,158, all of it consumer debt.

Makinen chose not to use any of the insurance policy proceeds to pay his debts. Instead, he paid his bankruptcy attorney $975 and filed this case. On March 17, 1999, Makinen filed his Chapter 7 petition and all the required lists and schedules. The meeting of creditors was held on April 12, 1999, and is now concluded.

Makinen claimed the entire $35,591.73 balance of remaining insurance proceeds exempt pursuant to Minn.Stat. § 550.37(10). The trustee filed an objection to the exemption, but later withdrew his objection.

The United States Trustee moves to dismiss this case under 11 U.S.C. § 707(b) because she claims that granting the debtor a Chapter 7 discharge would constitute a substantial abuse of the provisions of Chapter 7. In the alternative, she argues that the case ought to be dismissed under § 707(a) for cause. Makinen contends that his filing is not a substantial abuse because his only major asset, the proceeds of the insurance policy, is exempt. He contends that he needs the relief of a Chapter 7 discharge in order to obtain a fresh start.

## DISCUSSION

Section 707(b) provides, in relevant part:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

See 11 U.S.C. § 707(b).

Substantial abuse is not defined by the Bankruptcy Code. In *Stuart v. Koch (In re Koch)*, 109 F.3d 1285, 1288 (8th Cir.1997) the Eighth Circuit Court of Appeals held that the substantial abuse inquiry focuses on a debtor's ability to pay the debtor's debts. The Court, noting that "[t]he legislative history is meager and contradictory," cited *In re Kelly*, 841 F.2d 908, 914 (9th Cir.1988) for a good discussion of the legislative history, and concluded that "[i]n general, § 707(b) was intended to promote fairness to creditors, and thereby increase the flow of consumer credit, by 'stemming the use of Chapter 7 relief by unneedy debtors.'" *In re Koch*, 109 F.3d at 1288.

"[S]ubstantial ability to pay creditors standing alone warrants dismissal of a Chapter 7 petition" under § 707(b). *Id.* If a debtor's substantial ability to pay is not patent standing alone, "ability to pay for § 707(b) purposes is measured by evaluating Debtors' financial condition in a hypothetical Chapter 13 proceeding." *Id.;* see also *In re Khan*, 172 B.R. 613, 623

(Bankr.D.Minn.1994) (bankruptcy court may dismiss a Chapter 7 case under § 707(b) upon proof that a debtor could fund a Chapter 13 plan, or otherwise meet at least a significant portion of his or her pre-bankruptcy debt obligations without undue hardship).

■ A debtor's ability to pay is not, however, measured by an absolute standard. As the Court stated in *Koch,* "[t]hat would put all exemptions otherwise allowed in Chapter 7 at issue under § 707(b)." *Id.* at 1288, n. 3. In other words, § 707(b) is not a mechanism for forcing debtors to liquidate exempt assets to pay creditors. Exempt assets are exempt and as such protected from the reach of creditors.

■ Nor does consideration of exempt assets in a § 707(b) inquiry force a debtor into Chapter 13, or provide creditors access to the debtor's exempt assets if he does seek Chapter 13 relief. "Including exempt income in disposable income does not make exempt property 'liable' to Chapter 13 unsecured creditors. Chapter 13 relief is at the option of the debtor." *In re Koch,* 109 F.3d at 1289. "Chapter 13 relief remains wholly voluntary, and debtors whose Chapter 7 petitions are dismissed for substantial abuse are not compelled to file for Chapter 13 relief." *Id.* at 1290.

■ However, whether a creditor can reach an asset and whether a debtor has the ability to pay creditors using that asset are two different questions. The answer to the latter question determines not what the debtor must do with exempt property, but whether the debtor is entitled to bankruptcy relief under Chapter 7.

■ Ability to pay, however, is a determination necessarily subject to an infinite variety of circumstantial factors depending on a given debtor and the debtor's particular financial condition. As the Court pointed out in *Koch,* for example, a debtor's exempt homestead with value in excess of the debtor's unsecured debts is an unlikely target of § 707(b)'s ability to pay

assessment even though the debtor could conceivably sell the house and pay the creditors. *See In re Koch,* 109 F.3d at 1288, n. 3.

However, speculative reorganization of the debtor's affairs is not the same as determining the debtor's ability to pay based on the debtor's affairs as they actually presently exist.

The debtor argues that exempt assets may not be considered in determining his ability to pay his creditors. However, the Eighth Circuit effectively rejected this argument in *Koch* when it held that exempt social security benefits were appropriately considered in determining disposable income. *In re Koch,* 109 F.3d at 1288–89. Disposable income is "income received by the debtor that is not reasonably necessary to support the debtor, the debtor's dependents, or the debtor's business." *Id.* at 1289.

Makinen contends that his modest income makes apparent the fact that he has no ability to pay, and that the proceeds from his mother's insurance policy do not constitute income. In addition to his argument that exempt property should not be considered, he argues that the mere fact that the Prudential account is an asset and not income precludes it from being considered in determining his ability to pay.

Admittedly, *Koch* and other cases discuss § 707(b) analysis in terms of a debtor's ability to fund a Chapter 13 plan out of income rather than from assets. *See In re Koch,* 109 F.3d at 1288–90; *Fonder v. United States,* 974 F.2d 996, 999 (8th Cir. 1992). However, the distinction between an exempt lump sum cash asset and periodic future payments from another exempt source such as social security benefits is immaterial.

■ The cases discuss the revenue from an exempt source in terms of income and future income simply because that is the typical situation. The exempt income frequently under § 707(b) consideration is a

social security, workers' compensation, retirement, or similar benefit, the revenue from which is often a periodic payment. The essence of an exempt asset being properly considered in determining ability to pay under § 707(b) is the liquid nature of the asset and the extent to which it constitutes a disposable portion of the debtor's relative wealth.

■ In this case, I do not need to conduct a very sophisticated analysis of Makinen's wherewithal to fund a hypothetical Chapter 13 plan.[1] Makinen's Chapter 7 case standing alone amounts to substantial abuse. To be sure, he earns a modest income. However, the proceeds from his mother's insurance policy are liquid and significant compared to his debts and his future needs. He could pay all his debts in full and still have an amount more than twice his annual income left. He has sufficient cash to pay his debts in full and still have nearly three-fourths of his total cash assets remaining. As in *Koch*, Makinen's "fresh start is not endangered" by his use of his liquid asset to pay his creditors. *Id.*

Makinen claims that he needs his exempt cash fund his fiancee's new business, buy a new van for his business, and fund the down payment to buy a house. Indeed, he already bought an engagement ring, a new computer, and more than $1000 worth of promotional materials for this new business.

However, under these circumstances Makinen may not obtain a discharge of his debts in bankruptcy. He has enough instant cash available to pay his debts and still have an abundance leftover to fund extras. That is not the situation to which Congress intended Chapter 7 apply, and is precisely the situation § 707(b) was designed to prohibit.

■ The disposable income test limits "a debtor's ability to shelter income from exempt sources away from his creditors when he otherwise has sufficient income to meet his basic needs." *See In re Koch*, 109 F.3d at 1290. "Section 707(b), by incorporating a disposable income test, [ ] balances the interests of debtors and creditors by empowering courts to dismiss cases filed by non-needy debtors for substantial abuse 'if a debtor can meet his debts without difficulty as they come due.'" *Id.*, citing S.Rep. No. 65, 98th Cong., 1st Sess. 53, 54 (1983).

Makinen makes much of the fact that he has complied with all the requirements of the Bankruptcy Code and Rules and has properly taken advantage of the benefits of Chapter 7, including properly claiming his exemptions. He has not done anything that would forfeit his discharge under § 727(a) or acted in bad faith. For purposes of this opinions, I concede all that.

However, it was exactly for cases like this that Congress added § 707(b) in 1984. Section 707(b) is designed precisely for situations where the specific provisions of Chapter 7 would allow the debtor a discharge, but where granting the debtor that discharge would constitute an abuse of those provisions.

## CONCLUSION

The debtor's bankruptcy case constitutes a substantial abuse of the provisions of Chapter 7 and therefore warrants dismissal pursuant to 11 U.S.C. § 707(b). The United States Trustee's alternative argument under § 707(a) is moot.

---

1. In addition, whether or not Makinen would be otherwise eligible for Chapter 13 relief is another matter, not ripe to consider and not relevant for purposes of § 707(b). *See Fonder*, 974 F.2d at 999 (the court has never held that to be dismissed under § 707(b) a debtor must be eligible for Chapter 13 relief, and in some cases despite a substantial abuse dismissal the debtor may not qualify under Chapter 13).