United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 20, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-10459
_____

In Re: CARLOS VICENTE CORTEZ; SUZANNE HALLMAN CORTEZ

　　　　　Debtors

_____

UNITED STATES TRUSTEE

　　　　　Appellee

　　　v.

CARLOS VICENTE CORTEZ; SUZANNE HALLMAN CORTEZ

　　　　　Appellants

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

Before KING, STEWART and DENNIS, Circuit Judges.

KING, Circuit Judge:

　　　This case arises from the debtors' bankruptcy filed under

Chapter 7 on April 8, 2004, and the United States Trustee's

motion to dismiss for substantial abuse filed under 11 U.S.C.

§ 707(b) on July 9, 2004.  The issue presented on appeal is

whether a bankruptcy court should consider post-petition events

in deciding whether to dismiss a case for substantial abuse under

§ 707(b).  The bankruptcy court determined that post-petition

-1-

events should not be considered, and the district court reversed, holding that such circumstances should be considered in determining substantial abuse. Based on the version of § 707(b) that applied to cases filed before the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, we AFFIRM the district court's judgment and REMAND the case to the district court with instructions to remand it to the bankruptcy court for further proceedings consistent with this opinion.

## I.   BACKGROUND

### A.   Factual and Procedural History

On April 8, 2004, Carlos Vicente Cortez and Suzanne Hallman Cortez (collectively, "the Cortezes") jointly filed for bankruptcy under Chapter 7. In addition to their voluntary petition, the Cortezes filed their schedules, showing one secured claim in the amount of $176,000 on their homestead and unsecured debt in the amount of $85,719, the majority of which consisted of credit card debt. Schedule I listed the Cortezes' net income as $4147 per month, and Schedule J listed the Cortezes' total expenses as $5320 per month. At that time, Mr. Cortez was unemployed and Mrs. Cortez was employed as a registered nurse, so all of the income listed on Schedule I was attributable to Mrs. Cortez.[1]

---

[1] Mr. Cortez lost his job in late 2003 and was unemployed from January 1, 2004, through April 8, 2004. Prior to Mr. Cortez's unemployment, the Cortezes had combined annual income of

At the bottom of Schedule I, debtors are instructed to "[d]escribe any increase or decrease of more than 10% in any of the above categories anticipated to occur within the year following the filing of this document."  In response, the Cortezes disclosed that Mr. Cortez "believes he will be employed this month, but he has not started working yet."

On April 12, 2004, four days after the Cortezes filed for Chapter 7, Mr. Cortez was offered a position with Aramark Healthcare Management Services ("Aramark") as the Human Resource Director.  Mr. Cortez accepted the position and began working for Aramark on April 26, 2004.  As the Human Resource Director, Mr. Cortez earned an annual salary of $95,000, making his net income $5896 per month, and received a $5000 signing bonus after sixty days of employment.  Mr. Cortez was also eligible to receive a company car.

After Mr. Cortez began working for Aramark, Mrs. Cortez reduced her hours so that her net income as of October 1, 2004, was approximately $750 per month.  With Mr. Cortez's new job and Mrs. Cortez's reduced hours, the Cortezes' net income was $6646 per month, exceeding their expenses by $1325 per month.  The Cortezes provided documents to the United States Trustee ("Trustee") showing that Mr. Cortez was employed by Aramark and testified to the same at the § 341 meeting of the creditors on

---

$145,600 in 2003, and $147,363 in 2002.

May 10, 2004.

On July 9, 2004, the Trustee filed a motion to dismiss under 11 U.S.C. § 707(b), asserting that the Cortezes "appear to have the means to repay a substantial portion of their debts through a Chapter 13 plan," given that the Cortezes' income now exceeded their expenses by $1325 per month, and that it would therefore be a substantial abuse to grant the Cortezes' relief under Chapter 7. On July 28, 2004, the Cortezes filed their response, contending that Mr. Cortez was unemployed at the time they filed their Chapter 7 petition and that it was inappropriate for the court to consider post-petition events, including Mr. Cortez's employment with Aramark, in deciding whether to dismiss their case under § 707(b).

## B. Bankruptcy Court's Decision

On November 5, 2004, the bankruptcy court denied the Trustee's motion to dismiss, concluding "that post-petition events should not be considered in deciding whether to dismiss a case under section 707(b) unless the events were clearly in prospect at the time of filing for bankruptcy." Relying on In re Pier, 310 B.R. 347, 355 (Bankr. N.D. Ohio 2004), the bankruptcy court interpreted the phrase "granting of relief" in § 707(b) to mean an "order for relief," which occurs at the commencement of the case, under 11 U.S.C. § 301. The bankruptcy court reasoned that its analysis must therefore "focus on whether the order for

relief granted on the Petition Date by operation of section 301 was proper, not whether substantial abuse would occur if the court were to grant that same relief for the first time today." The bankruptcy court concluded that it was barred from considering facts that arose after the commencement of the case in deciding substantial abuse under § 707(b). In other words, the bankruptcy court determined that it could consider the circumstances only as they existed on the petition date, "including anticipating post-petition events known to be in prospect at the time of filing."

The bankruptcy court explained that using the date of filing for deciding whether substantial abuse exists was consistent not only with the language of §§ 301 and 707(b), but also with the Bankruptcy Code's general policy of using the filing date to determine a party's rights in a bankruptcy case. The bankruptcy court pointed out that the automatic stay under § 362, the debtor's entitlement to exemptions under § 522, and the determination of secured claims under § 506, among other Code provisions, all use the petition date as the point of reference.

Applying its interpretation of § 707(b) to the Cortezes' case, the bankruptcy court found that Mr. Cortez's post-petition employment could not be considered because it was not an event clearly in prospect at the petition date.[2] Given that it could

---

[2] The bankruptcy court provided an example of an event "clearly in prospect" at the petition date. According to the

not consider Mr. Cortez's post-petition improvements in earnings, the bankruptcy court concluded that the debtors did not have the ability to fund a Chapter 13 plan and therefore denied the Trustee's motion to dismiss.

## C.    District Court's Decision

On March 9, 2005, the district court reversed the bankruptcy court's order, holding that the language of § 707(b) makes clear "[t]hat post-petition events are to be taken into account in ruling on a motion under § 707(b)."  The district court explained that § 707(b) specifically instructs courts not to consider whether a debtor has made, or continues to make, charitable contributions.  The district court reasoned that the fact that no other limitations are placed on the court in ruling on such motions provides sufficient support for its conclusion that the text of § 707(b) takes post-petition events into account, except to the extent that the debtor continues to make charitable contributions.

The district court also distinguished In re Pier, 310 B.R. 347, the primary case the bankruptcy court relied on in its

---

bankruptcy court, if Mr. Cortez had reached an oral agreement to begin employment at Aramark or had received a formal letter from Aramark prior to the petition date, it would be proper to consider his employment with Aramark in deciding whether the Cortezes have the ability to repay their creditors.  Given that Mr. Cortez did not receive an offer of employment with Aramark until after the Cortezes filed for Chapter 7, the bankruptcy court concluded that Mr. Cortez's employment was not clearly in prospect on the petition date.

interpretation of § 707(b), as standing "for the proposition that a later change in circumstances will not necessarily save a bankruptcy whose original filing was a substantial abuse of the provisions of Chapter 7."  The district court explained that

> [s]uch is not the case here, where the issue is whether debtors have the ability to make significant payments to their creditors from future income.  Moreover, there was no need for the bankruptcy court to rely on Pier in making a case for assessing a § 707(b) motion as of the time of filing of a petition.  All of the pertinent authorities implicitly, if not explicitly, recognize that a debtor's current and future expected income is to be taken into account in determining whether the debtor is in need of Chapter 7 relief.

(citing Behlke v. Eisen (In re Behlke), 358 F.3d 429, 434-35 (6th Cir. 2004), Stuart v. Koch (In re Koch), 109 F.3d 1285, 1288 (8th Cir. 1997), and In re Laman, 221 B.R. 379, 381 (Bankr. N.D. Tex. 1998)).

## D.    Subsequent Proceedings

On March 4, 2005, while the case was on appeal to the district court, Mr. Cortez lost his job at Aramark.  The Cortezes contend that the district court was unable to consider Mr. Cortez's job loss because the district court issued its order and final judgment on March 9, 2005, without oral argument and before the Cortezes could file a reply brief advising the district court of their post-petition change in financial circumstances.  As of May 2, 2006, Mr. Cortez was still unemployed.

On April 7, 2005, the Cortezes filed this appeal, arguing that (1) the district court erred in concluding that § 707(b)

-7-

takes into account post-petition events, and (2) the district court erred in limiting the bankruptcy court's ability to consider additional post-petition changes on remand, such as Mr. Cortez's job loss and current unemployment.

## II.  DISCUSSION

## A.  Jurisdiction

Before addressing the merits of this dispute, we first must consider whether we have jurisdiction to hear this appeal. Although neither party raised the issue before this court, "'we are obligated to examine the basis for our jurisdiction, <u>sua sponte</u>, if necessary.'"  <u>Chunn v. Chunn (In re Chunn)</u>, 106 F.3d 1239, 1241 (5th Cir. 1997) (quoting <u>Williams v. Chater</u>, 87 F.3d 702, 704 (5th Cir. 1996)).

We have jurisdiction to hear "appeals from all final decisions, judgments, orders, and decrees" in bankruptcy matters entered under § 158(a) and (b).  28 U.S.C. § 158(d)(1); <u>see also Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distribs., Inc.)</u>, 157 F.3d 414, 420 (5th Cir. 1998) (observing that this court is "limited to reviewing only final orders" under § 158(d)).  "[W]hen a district court sitting as a court of appeals in bankruptcy remands a case to the bankruptcy court for significant further proceedings, the remand order is not 'final' and therefore not appealable under § 158(d)."  <u>Conroe Office Bldg. Ltd. v. Nichols (In re Nichols)</u>, 21 F.3d 690, 692 (5th Cir.

-8-

1994).

In determining what constitutes "significant further proceedings," we distinguish between those remands requiring the bankruptcy court to perform "judicial functions" and those requiring mere "ministerial functions."  See Beal Bank, S.S.B. v. Caddo Parish-Villas S., Ltd. (In re Caddo Parish-Villas S., Ltd.), 174 F.3d 624, 627-28 (5th Cir. 1999).  Remands that require the bankruptcy court to perform judicial functions, such as additional fact-finding, are not final orders and, therefore, are not appealable to this court.  See Aegis Specialty Mktg., Inc. v. Ferlita (In re Aegis Specialty Mktg., Inc.), 68 F.3d 919, 921 (5th Cir. 1995).  "However, if the remand involves only ministerial proceedings, such as the entry of an order by the bankruptcy court in accordance with the district court's decision, then the order should be considered final."  In re Caddo, 174 F.3d at 628 (internal quotation marks and citation omitted).

In this case, the district court reversed the bankruptcy court's order denying the Trustee's motion to dismiss under § 707(b), and remanded the case to the bankruptcy court "to allow [the Cortezes] to take action to convert to a Chapter 13 proceeding within ten days from the date of this order; otherwise, the bankruptcy court is instructed to dismiss the

proceeding."[3]  We are satisfied that this remand order leaves only ministerial tasks for the bankruptcy court and therefore constitutes a final order under § 158(d).  See In re Pro-Snax, 157 F.3d at 420-21 (concluding that jurisdiction exists under § 158(d) where "[t]he district court's remand order neither necessitates further fact-finding nor the use of substantial discretion on the part of the bankruptcy court"); see also In re Caddo, 174 F.3d at 628 (stating that a remand order is final if all that remains to do on remand is "purely mechanical" or "mere entry of an order in accordance with the district court's decision").  Because we conclude that we have jurisdiction pursuant to § 158(d), we turn to the merits of this appeal.

**B.    Construction of 11 U.S.C. § 707(b)**

This case, one of first impression in this circuit, requires us to determine whether dismissal for "substantial abuse" in § 707(b) includes a consideration of post-petition events, a question of law that we review de novo.  See Sec. State Bank v. IRS (In re Van Gerpen), 267 F.3d 453, 455-56 (5th Cir. 2001).  Section 707(b), in relevant part, provides that

> the court, on its own motion or on a motion by the United States trustee, . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of

---

[3]  At oral argument, counsel for the Trustee explained that this was not the relief requested by the Trustee.  Instead, the Trustee requested that the district court reverse the bankruptcy court's legal determination and remand the case to the bankruptcy court for a determination on the § 707(b) motion to dismiss.

-10-

relief would be a substantial abuse of the provisions of this chapter. . . . In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions . . . .

11 U.S.C. § 707(b).[4]  Whether subsequent improvements in the debtor's earnings warrant dismissal is not directly answered by the text itself.[5]  Still, as with any statutory analysis, we begin with the words of the statute, keeping in mind that "the meaning of statutory language, plain or not, depends on context." Brown v. Gardner, 513 U.S. 115, 118 (1994) (quoting King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991) (citing Shell Oil Co. v. Iowa Dep't of Revenue, 488 U.S. 19, 26 (1988))).

The statute conditions dismissal on a finding "that the granting of relief would be a substantial abuse of the provisions of this chapter."  11 U.S.C. § 707(b).  Although "granting of relief" is undefined, its context reveals that it is referring to a Chapter 7 discharge, and not the relief associated with the

---

[4]  On April 20, 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("2005 Act"), Pub. L. No. 109-8, 119 Stat. 23 (2005), which amended § 707(b), inter alia, to set forth a financial means test for determining whether a Chapter 7 case is presumed to be an abuse and also set forth certain other criteria to be considered when such a presumption does not arise.  See Pub. L. No. 109-8, § 102.  Because these amendments apply only to cases commenced on or after October 17, 2005, they are not relevant to this appeal.

[5]  The parties do not contest that the Cortezes are individuals and that their debts are primarily consumer debts, two of the threshold requirements under § 707(b), leaving us to decide only whether a court can consider post-petition events in determining substantial abuse under the statute.

-11-

commencement of the case under § 301.  First, the phrase

"provisions of this chapter" refers to Chapter 7, the chapter in

which § 707(b) is located.  Section 727, the relief under Chapter

7, discharges the debtor from all debts that arose before the

filing of the petition.  See id. § 727(b).  That "granting of

relief" means a discharge under § 727 and not an order for relief

under § 301 is also evident from the use of the words "would be"

following "granting of relief," indicating that the relief is to

take place sometime in the future.  This interpretation is

consistent with the bankruptcy procedural rules, which delay

granting a § 727 discharge when a motion to dismiss under

§ 707(b) is pending.  See FED. R. BANKR. P. 4004(c)(1)(D).

Finally, the courts of appeals considering § 707(b) have

implicitly, if not explicitly, recognized that "granting of

relief" means a Chapter 7 discharge.  See First USA v. Lamanna

(In re Lamanna), 153 F.3d 1, 3 (1st Cir. 1998) ("Section 707(b)

was enacted to impose a restraint on consumer debtors' access to

Chapter 7 discharge by interposing bankruptcy courts as

gatekeepers who could examine the worthiness of debtor petitions

and dismiss those petitions deemed abusive.") (emphasis added);

U.S. Trustee v. Harris (In re Harris), 960 F.2d 74, 75 (8th Cir.

1992) (stating that § 707(b) "permits the bankruptcy court to

dismiss a Chapter Seven proceeding if it finds that granting a

discharge 'would be a substantial abuse of the provisions of this

chapter'") (emphasis added); see also 6 COLLIER ON BANKRUPTCY

-12-

¶ 707.04[5][a] (15th ed. rev. 2006) ("In determining whether a substantial abuse exists, there is a presumption in favor of granting the relief sought by the debtor, i.e., a discharge."). Therefore, we think that the "granting of relief" in § 707(b) is referring to the relief associated with Chapter 7, the discharge of all debts under § 727, and not the relief associated with the commencement of the case under § 301.[6]

Section 707(b) does not condition dismissal on the filing of bankruptcy being a "substantial abuse" but rather on the granting of relief, which suggests that in determining whether to dismiss under § 707(b), a court may act on the basis of any development occurring before the discharge is granted. Other language in § 707(b) supports this view and indicates that a substantial abuse determination is forward looking. The last sentence in § 707(b) states that "[i]n making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions . . . ." 11 U.S.C. § 707(b) (emphasis

---

[6] The bankruptcy court relied on In re Pier, 310 B.R. 347, a bankruptcy court decision from the Northern District of Ohio, in concluding that the "granting of relief" referred to an "order for relief." Such a reliance was understandable in light of the fact that the court in In re Pier appears to be the only court to have considered this issue. However, because we are not bound by In re Pier and because we conclude that the meaning of "granting of relief" depends in large part on its placement in the statute, see Brown, 513 U.S. at 118, we conclude that the "granting of relief" under § 707(b) means a Chapter 7 discharge under § 727.

added).  In other words, § 707(b) expressly instructs the court not to consider whether the debtor had made or currently makes charitable contributions.  We agree with the district court that the absence of limiting language like this in the earlier part of subsection (b) indicates that Congress did not intend to place any other limitations on the court in ruling on such motions.  However, we would take the district court's statutory analysis one step further and point out that the phrase "or continues to make" suggests that the court is entitled to focus on subsequent developments in the debtor's financial condition, except to what charities the debtor is presently contributing.

Although some of the statutory language in § 707(b) indicates that a court can consider post-petition events occurring prior to the discharge, we must still give effect to the words "substantial abuse" in § 707(b).  Neither the statute nor any other provision in the Bankruptcy Code defines "substantial abuse" or indicates how it should be determined. While none of our sister circuits has considered whether a court should take into account post-petition events in making a substantial abuse determination, many of them have addressed how substantial abuse should be determined under § 707(b).  See Stewart v. U.S. Trustee (In re Stewart), 175 F.3d 796, 809 (10th Cir. 1999); Kornfield v. Schwartz (In re Kornfield), 164 F.3d 778, 784 (2d Cir. 1999); In re Lamanna, 153 F.3d at 2; Green v. Staples (In re Green), 934 F.2d 568, 572-73 (4th Cir. 1991); In

-14-

re Krohn, 886 F.2d 123, 126 (6th Cir. 1989); In re Walton, 866 F.2d 981, 983-84 (8th Cir. 1989); Zolg v. Kelly (In re Kelly), 841 F.2d 908, 914-15 (9th Cir. 1988). These courts agree that a debtor's ability to repay his debts out of future income is a primary factor to be considered in determining whether to dismiss for substantial abuse.[7] A consideration of the debtor's future earnings also follows the analysis favored by most bankruptcy commentators. See, e.g., 6 COLLIER ON BANKRUPTCY ¶ 707.04[4] (15th ed. rev. 2006) ("The primary factor that may indicate a

---

[7] In fact, some circuits have held that the debtor's ability to pay alone can establish substantial abuse. See In re Walton, 866 F.2d at 983-84 (holding that the ability to fund a Chapter 13 plan can be a sufficient reason to dismiss a Chapter 7 case under § 707(b)); In re Kelly, 841 F.2d at 915 ("[A] finding that a debtor is able to pay his debts, standing alone, supports a conclusion of substantial abuse.").

Other circuits apply a totality of the circumstances approach, recognizing that the debtor's ability to repay his debts is a primary factor, see In re Stewart, 175 F.3d at 809, In re Kornfield, 164 F.3d at 784, and In re Green, 934 F.2d at 572-73, while others apply the same standard, but conclude that the debtor's ability to repay debts out of future earnings may be enough by itself. See In re Lamanna, 153 F.3d at 2 ("[W]e do not require a court to look beyond the debtor's ability to repay if that factor warrants the result."); In re Krohn, 886 F.2d at 126 (same).

Lower courts in the Fifth Circuit, including the bankruptcy court and the district court in this case, have adopted the totality of the circumstances approach, with emphasis on the debtor's ability to repay debts under a Chapter 13 plan, as set forth in In re Lamanna and In re Krohn. See, e.g., In re Hill, 328 B.R. 490, 494-96 (Bankr. S.D. Tex. 2005); In re Rubio, 249 B.R. 689, 695-96 (Bankr. N.D. Tex. 2000); In re Faulhaber, 243 B.R. 281, 284 (Bankr. E.D. Tex. 1999); In re Lampkin, 221 B.R. 390, 392 (Bankr. W.D. Tex. 1998). The Cortezes do not dispute that this standard applies or ask us to adopt a different test for determining substantial abuse. Accordingly, for purposes of this appeal, we will assume, without deciding, that this is the correct standard.

-15-

substantial abuse is the ability of the debtor to repay the debts out of future disposable income.") (citing S. REP. NO. 98-65, at 54 (1983)).

In determining a debtor's ability to repay his debts out of future earnings, we consider whether the debtor has sufficient disposable income to fund a Chapter 13 plan.  See In re Koch, 109 F.3d at 1288 ("[A]bility to pay for § 707(b) purposes is measured by evaluating Debtors' financial condition in a hypothetical Chapter 13 proceeding.").  In other words, we must look to Chapter 13 to see what the creditors would receive had the debtors filed a Chapter 13 plan.  See In re Walton, 866 F.2d at 985 (holding that the debtor's ability to pay, out of future income, 68% of unsecured debt within three years supported the determination of substantial abuse).  Such an abuse determination is necessarily forward looking because it asks whether creditors would receive more from the debtors' future earnings in a Chapter 13 than they would receive in a Chapter 7.

"Chapter 13 affords 'an individual with regular income' the option of preserving [his] 'pre-petition assets through a three-to five-year plan funded primarily' with that individual's regular income."  Taylor v. United States (In re Taylor), 212 F.3d 395, 397 (8th Cir. 2000) (quoting 11 U.S.C. § 109(e), and In re Koch, 109 F.3d at 1288).  "[P]ost-petition earnings of the debtor constitute the principal means of funding the plan."  8 COLLIER ON BANKRUPTCY ¶ 1306.02[3] (15th ed. rev. 2006); see also 11

U.S.C. § 1306(a)(2). While it might seem, as one bankruptcy scholar put it,[8] that "[s]ubstantial clairvoyance" is necessary to determine a Chapter 7 debtor's post-petition earnings and ability to fund a Chapter 13 plan, the task is made easier by § 521(1), which was added at the same time Congress amended the Bankruptcy Code to include § 707(b). See Fonder v. United States, 974 F.2d 996, 999 (8th Cir. 1992) ("When Congress enacted § 707(b) in 1984, it also added the requirement that debtors file an Income/Expense Schedule '[t]o facilitate addressing the question of abuse in Chapter 7 cases.'") (quoting 3 NORTON BANKRUPTCY LAW & PRACTICE § 69.01 n.12 (1991)); see also 6 COLLIER ON BANKRUPTCY ¶ 707.04[2] (15th ed. rev. 2006) (stating that "[s]ection 707(b) must be considered in conjunction with section 521"). Section 521(1) requires a debtor to file "a schedule of current income [i.e., Schedule I] and current expenditures [i.e., Schedule J]." In addition to requiring debtors to disclose their current income, Schedule I instructs debtors to "[d]escribe any increase or decrease of more than 10% in any of the above categories anticipated to occur within the year following the filing of this document." The same schedules are filed to commence both Chapter 7 and Chapter 13 proceedings. See Fonder, 974 F.2d at 999. If sufficient income to fund a Chapter 13 plan

---

    [8] See Jeffrey W. Morris, Substantive Consumer Bankruptcy Reform in the Bankruptcy Amendments Act of 1984, 27 WM. & MARY L. REV. 91, 99-100 (1985).

is anticipated, a complete discharge of the debtor's obligations would constitute a substantial abuse of Chapter 7.

When, as here, the debtors' future earnings are not known at the time of filing, we should look to the requirements imposed on debtors under Chapter 13. In a Chapter 13 proceeding, debtors are obligated to amend their schedules to include subsequent income, even if that income is not known or realized at the time of filing. Section 521(3) requires the debtor to cooperate with the trustee, and § 1302(b) imposes duties on the trustee, including the duty to investigate the debtor's financial affairs under § 704(4). Based upon the trustee's investigation of the debtor's financial affairs, the trustee makes a decision to support or oppose confirmation of the Chapter 13 plan. If the trustee objects to the plan confirmation, the court may not approve the plan unless it "provides that <u>all</u> of the debtor's projected disposable income to be received [during the plan] will be applied to make payments under the plan." 11 U.S.C. § 1325(b)(1)(B) (emphasis added).[9] Even if the plan, as initially proposed, is confirmed, § 1329 allows the trustee to seek a subsequent modification of the plan based on an increase in the debtor's income, so that more money is paid to the creditors. <u>See</u> <u>id.</u> § 1329(a)(1); <u>see also</u> Arnold v. Weast (In re

_____

   [9] Section 1325(b)(2)(A) defines disposable income for purposes of Chapter 13 as income received by the debtor that is not reasonably necessary for support of the debtor or the debtor's dependents.

Arnold), 869 F.2d 240, 241 (4th Cir. 1989) ("[I]t is well-settled that a substantial change in the debtor's financial condition after confirmation may warrant a change in the level of payments."). Put another way, permitting a debtor to retain post-petition improvements in earnings, without committing the increase in income that is not reasonably necessary for support of the debtor or the debtor's dependents, would be grounds for rejection or later modification of a Chapter 13 plan. As a practical matter, then, the debtors would be obligated to amend their schedules to disclose any post-petition income under Chapter 13. Therefore, it would seem to us, drawing on Chapter 13 and the schedules themselves, as we are required to do in a substantial abuse determination under § 707(b), that post-petition improvements in earnings can be taken into account and should be taken into account up until the point at which the discharge is entered.[10]

The Cortezes insist that if we include post-petition income as a consideration for substantial abuse under § 707(b), this court will infringe upon § 541(a)(6), which states that post-

---

[10] In so holding, we are mindful of the Cortezes' argument that the date of filing is the critical date for determining rights (e.g., the automatic stay, entitlement to exemptions) in a Chapter 7 proceeding. While this may be true, we do not find this argument persuasive because it fails to take into account other sections of the Code that require analysis of post-petition circumstances. See, e.g., 11 U.S.C. § 727(a) (requiring the court to deny a Chapter 7 discharge based on certain post-petition circumstances, such as destroying books and records, making a false oath, or failing to explain the loss of assets).

petition earnings are not property of the estate in a Chapter 7 proceeding. Cf. 11 U.S.C. § 1306(a)(2). The Cortezes argue that their case is akin to Burgess v. Sikes (In re Burgess), 438 F.3d 493 (5th Cir. 2006), in which this court, sitting en banc, held that a post-petition disaster-relief payment was not property of the estate within the meaning of § 541(a)(6).

This case is easily distinguished from the one we faced in In re Burgess. While we do not dispute the Cortezes' contention that debtors are entitled to exclude their post-petition earnings from the estate in a Chapter 7 proceeding, the ability to exclude post-petition income for purposes of a Chapter 7 estate is an independent issue from whether debtors have the ability to repay their debts. The latter issue is the pertinent inquiry for determining substantial abuse under § 707(b), and we conclude, like those circuits considering whether exempt property should be included for purposes of a substantial abuse determination, that post-petition improvements in earnings can be considered in ruling on a motion to dismiss. See In re Taylor, 212 F.3d at 397 (stating "that the relevant inquiry is not whether the payments are exempt from creditors in a Chapter 7 proceeding but whether the challenged payments would constitute income in a hypothetical proceeding under Chapter 13 of the United States Bankruptcy Code"); In re Kornfield, 164 F.3d at 784 ("A totality of the circumstances inquiry is equitable in nature and existence of an asset, even if exempt from creditors, is relevant to a debtor's

ability to pay his or her debts [under § 707(b)]."). Accordingly, although post-petition earnings are not property of the estate under § 541(a)(6), the court can and should take them into account for purposes of determining substantial abuse under § 707(b).[11]

Given that post-petition events should be considered up until the date of discharge,[12] we remand this case to the district court with instructions to return it to the bankruptcy court. See In re Koch, 109 F.3d at 1290 ("The final decision on a § 707(b) motion to dismiss should be made initially by the bankruptcy court."). On remand, the bankruptcy court should consider any post-petition events affecting the Cortezes' financial situation, including any post-petition improvements in income or, if still applicable, Mr. Cortez's unemployment.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court reversing the judgment of the bankruptcy court, and REMAND to the district court, with instructions to remand to the bankruptcy court for further proceedings consistent with this

---

[11]  In so holding, we do not opine on the effects of the amendments to § 707(b) under the 2005 Act.

[12]  We are mindful that, pursuant to FED. R. BANKR. P. 1017(e), the trustee is required to file a motion to dismiss under § 707(b) within sixty days of the § 341 meeting of the creditors, unless, prior to the expiration of that period, the trustee requests and the court finds good cause to extend that deadline.

opinion.  Costs shall be borne by appellants.

AFFIRMED and REMANDED.