**In re John E. KRAUSE and Susan S. Krause, Debtors.**

**No. 05–14790–MWV.**

United States Bankruptcy Court, D. New Hampshire.

July 28, 2006.

Mark P. Cornell, Esq., Concord, NH, for Debtor.

Geraldine Karonis, Esq., Office of the United States Trustee, Assistant United States Trustee.

## MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

The United States Trustee (the "Trustee") filed a motion to dismiss John and Susan Krause's (the "Debtors") bankruptcy case pursuant to section 707(b) [1] on the grounds that granting Chapter 7 relief would be a "substantial abuse" of the Bankruptcy Code. The Debtors objected to the Trustee's motion. The Court held two hearings on the matter, the second being an evidentiary hearing, and took the matter under advisement at the close of the evidentiary hearing.

### JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).

This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### BACKGROUND

The Debtors filed a voluntary Chapter 7 petition on October 12, 2005. The bankruptcy petition shows unsecured debts in the amount of $124,668.79, including a student loan obligation of $31,728. The remaining $92,940.79 consists of debts owed on eighteen credit cards, including gas cards and cards issued by individual retailers. The Debtors' home is valued at $200,000, with $194,938.99 subject to a mortgage, monthly payments toward which are listed on Schedule J as $1,647.43. [2]

At the time of filing, Mr. Krause's annual salary was approximately $50,000, and Mrs. Krause's salary was approximately $71,000. Mr. Krause has since moved to California and more than doubled his salary, to approximately $115,000. Mrs. Krause, whose employment has not changed since the petition date, and their teenage son intend to join Mr. Krause in California as soon as possible. The Trustee filed her motion to dismiss based on the Debtors' schedules that showed a combined salary of $121,000, not based on the Debtors' current combined salary of $186,000. [3]

The Debtors' combined monthly net income reported on Schedule I (prior to Mr. Krause obtaining higher-paying employment) is $7,431.59. From this amount, the Debtors subtracted the following expenses:

1. All references to the "Bankruptcy Code" or to specific sections are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. § 101, *et seq.*

2. Mr. Krause indicated at the hearing that this payment has since increased to approximately $2,000.

3. In determining whether granting relief under Chapter 7 would constitute substantial abuse, the Court will consider Mr. Krause's post-petition salary increase. *See United States Trustee v. Cortez (In re Cortez),* 457 F.3d 448, 457–58 (5th Cir.2006) (holding "that post-petition improvements in earnings can be taken into account and should be taken into account" in a substantial abuse determination).

| | |
|---|---|
| Mortgage payment (not including real estate or property taxes) | $ 1,647.43 |
| Utilities (electricity, heat, water, sewer) | $ 349 |
| Telephone | $ 100 |
| Cellular telephone | $ 100 |
| Cable television | $ 120 |
| Internet | $ 50 |
| Home maintenance | $ 400 |
| Food (including school lunches) | $ 1,185 |
| Clothing | $ 530 |
| Laundry and dry cleaning | $ 175 |
| Medical and dental | $ 126 |
| Transportation (not including car payments) | $ 413 |
| Recreation, etc. | $ 104 |
| Charitable contributions | $ 120 |
| Life insurance | $ 98 |
| Auto insurance | $ 118.83 |
| Auto payment | $ 387.87 |
| Student loan | $ 535.08 |
| Orthodontic care | $ 210 |
| Personal care | $ 90 |
| School supplies | $ 20 |
| Child's extracurricular activities | $ 80 |
| Gifts | $ 150 |
| Newspapers | $ 24 |
| Vacation | $ 420 |
| Savings bonds for college | $ 117 |

These expenses total $7,670.21, exceeding the Debtors' scheduled monthly net income by $238.62.

## DISCUSSION

■ The Trustee's position is that the Debtors have unreasonably high expenses and "if they were to adjust their lifestyle by cutting back on [their expenses] they would be able to make a meaningful distribution to their creditors in chapter 13."[4]

### I. Section 707(b)

■ Section 707(b) provides, in relevant part:

After notice and a hearing, the court, on its own motion or on a motion by the United States trustee ... may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There

shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b). The term "consumer debt" is defined as "debt incurred by an individual primarily for a personal, family, or household purpose." § 101(8). All of the Debtors' debt appears to be "consumer debt." The issue, then, is whether granting Chapter 7 relief would constitute "substantial abuse," which "can be predicated upon either lack of honesty or want of need." *First USA v. Lamanna (In re Lamanna),* 153 F.3d 1, 5 (1st Cir.1998) (quoting *In re Krohn,* 886 F.2d 123, 126 (6th Cir.1989)). After observing the testimony of both Debtors, the Court does not doubt their honesty, thus, the Court must determine whether the Trustee has demonstrated a want of need. Substantial abuse is determined by the totality of the circumstances, and the factors to be considered in determining whether the Debtors are "needy" and whether "substantial abuse" will result if relief is granted include the following:

1. whether the debtor has the ability to repay debts out of future income,

2. whether the debtor enjoys a stable source of future income,

3. whether the debtor is eligible for chapter 13 relief,

4. whether there are state remedies with the potential to ease the debtor's financial predicament,

5. whether relief is obtainable through private negotiations, and

6. whether the debtor's expenses can be reduced significantly without depriving the debtor, and his dependants, of adequate food, shelter, and other necessities.

---

4. Although the Trustee moves to dismiss pursuant to section 707(b), she stated at the hearing that she has no objection to the Debtors' converting to Chapter 13.

*In re Hand*, 323 B.R. 14, 17–18 (Bankr. D.N.H.2005) (citing *In re Lamanna*, 153 F.3d at 4–5).

## II.   The Debtors' Expenses

The Trustee argues that the monthly food expense of $1,140 is excessive for the Debtors and their teenage son. The Debtors explain that this figure includes all household meals, meals at work, and approximately two meals per week at home that the Debtors characterize as necessary business-related entertaining. In addition to the food expense, the Debtors list an expense of $45 for school lunches, which makes a total monthly food expense of $1,185. The Debtors also explain that Mrs. Krause requires a special diet because she is diabetic, however, the Debtors presented no evidence of how much the special diet contributes to their food expense. The Debtors' food expense is perhaps the highest this Court has ever seen for a family of three. A monthly food expense of $900, while still seemingly high, is probably more appropriate.

The Trustee also questions the Debtors' clothing expense of $530 per month, which is much higher than the average debtor with a family of three. The Court understands that both Debtors must wear professional clothing and that they have a teenage son, however, this expense can be reduced without depriving the Debtors or their son of necessary clothing.

Under the description "vacation," the Debtors listed a $420 monthly expense. The Debtors explain that this expense is not really a vacation, but rather an attempt to biannually visit family in Korea or to pay for Korean relatives to visit the Debtors in the United States. At $420 per month, the Debtors would spend $10,080 for each trip. Although the Court appreciates the importance of such visits, the allocation of $420 per month for these trips is not an appropriate expense in a Chapter 7 bankruptcy case. This $420 could be paid to unsecured creditors under a Chapter 13 plan.

The Debtors list a $210 monthly orthodontic expense for braces for their teenage son. However, this expense is anticipatory, as their son is not currently undergoing orthodontic care. In addition, the Debtors testified at the hearing that they are not, in fact, putting the money aside. Hence, this is not a current expenditure. Similarly, the Debtors listed a monthly expense of $117 for "savings bonds for college," but at the hearing Mrs. Krause testified that she is only saving $50 per month for college. Of course, saving money for college and orthodontics is important, but Schedule J is meant for current expenditures, not wishful expenditures.

Although the Debtors stress that their expenses do not include common examples of unreasonable expenses such as luxury goods, private schools, or vacation time-shares, the Court finds that the Debtors can significantly reduce their expenses without depriving themselves or their son "of adequate food, shelter, and other necessities." *In re Lamanna*, 153 F.3d at 4.

## III.   The Debtors' Ability to Fund a Chapter 13 Plan

The Court finds that the Debtors would be able to reduce their expenses and fund a Chapter 13 plan that pays a significant sum to unsecured creditors. First, elimination of the $420 "vacation" expense would create $420 in disposable income. Second, there is room for some belt tightening in the Debtors' food and clothing expenses. Currently, the Debtors list a total food expense of $1,185, which could certainly be reduced at least to $900, yielding disposable income of $285. The $530 monthly clothing expense, too, could be reduced to somewhere in the neighborhood

of $300, resulting in approximately $230 of disposable income. Third, the Debtors testified that they are not currently making the orthodontic expense of $210 and they are only making $50 of the scheduled $117 college savings bond expense. Finally, a glance at Schedule J reveals many expenses that are higher than those of the typical Chapter 7 debtor.[5]

Even if the Court overlooks the orthodontic and college "expenses," reductions in vacation, food, and clothing expenses alone would yield approximately $935 in monthly disposable income. If the Debtors proposed a thirty-six month plan under Chapter 13 that paid $935 per month, the Debtors would pay $33,660, or 27% of their unsecured debt.[6] That is a substantial dividend.

## IV. Substantial Abuse

According to their schedules, Mr. Krause's gross annual salary is approximately $50,000, and Mrs. Krause's salary is approximately $71,000, a total of $121,000. Since filing their bankruptcy petition, Mr. Krause has changed employment and his new salary is approximately $115,000, making a current combined salary of $186,000. While the Court understands that Mrs. Krause may experience a period of unemployment while she transitions to a new job in California, the Debtors presented no evidence that Mrs. Krause will be unable to find a job in which she will earn the same as, or more than, she earns now. Thus, the Debtors'

current combined salary of $186,000 will likely remain unchanged, or even increase, upon Mrs. Krause's finding employment in California.

Based on their scheduled earnings, the Court finds that the Debtors are eligible for Chapter 13 relief and that they would be able to able to fund a Chapter 13 plan that pays at least 27% of their scheduled unsecured debts. When the Court considers Mr. Krause's increased salary, the Court is only more convinced of the Debtors' ability to fund a plan and pay at least a portion of their debts. *See In re Cortez, supra.* The Court holds that granting Chapter 7 relief to the Debtors would be a substantial abuse of the Bankruptcy Code, the presumption in favor of the Debtors notwithstanding. While the Debtors have been honest and truthful, they simply are not in need of Chapter 7 relief.

### CONCLUSION

The Trustee's motion is granted, and the Debtors' Chapter 7 case will be dismissed, effective August 18, 2006, unless they convert to Chapter 13 no later than August 17, 2006. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

---

5. In particular, the Trustee questioned the laundry and dry cleaning expenses, the entertainment and gift expenses, and the Internet and cellular telephone expenses. While the Debtor had reasonable explanations for many of these expenses, the Court notes that a $175 laundry and dry cleaning expense is rather high, as is the $150 gift expense.

6. These estimates do not take attorneys' fees or trustee fees into account. These estimates

of potential disposable income and Chapter 13 dividend are made for the purposes of determining substantial abuse under section 707(b), and are not binding on either the Debtors or the Chapter 13 trustee in the event the Debtors convert to Chapter 13. The Court's estimate also assumes that the student loan creditor and the other unsecured creditors would receive the same dividend. *See In re Bentley,* 266 B.R. 229 (1st Cir. BAP 2001).