LESLIE H. SOUTHWICK, Circuit Judge,
dissenting:
With respect, I dissent. In my view, we have jurisdiction to resolve this appeal on its merits.
As the majority opinion states, our jurisdiction extends to “final decisions, judgments, orders, and decrees.” 28 U.S.C. § 158(d). “[W]hen a district court sitting as a court of appeals in bankruptcy remands a case to the bankruptcy court for significant further proceedings, the remand order is not ‘final’ and therefore not appealable under § 158(d).” In re Cortez, 457 F.3d 448, 453 (5th Cir.2006). Significant further proceedings are ones likely to generate new appeals. Matter of Pro-Snax Distributors, Inc., 157 F.3d 414, 420 (5th Cir.1998). The remand to the bankruptcy court in our ease was not of that nature.
Understanding what the district court ordered in this case begins with its memorandum opinion. Relevant here, the court agreed with the bankruptcy court that only three categories of submitted legal services were compensable. Though the bankruptcy court “correctly applied Pro-Snax’s requirement that it award fees based on whether the attorneys’ services resulted in a material benefit,” the district court could not determine whether the fee amount was properly calculated. Thus the case was “remanded for the bankruptcy court to determine the reasonable fee, after OAK identifies the number of hours to be allocated to the three categories of com-pensable services.” To me, this required that the attorney take the documentation already provided and identify which hours applied to the relevant categories.
The district court’s actual order also shows the narrowness of the task:
This case is remanded to the bankruptcy court to determine the amount of time reasonably and actually spent on providing the three categories of com-pensable legal services found in this case and the reasonable fee for that work.
Finally, the bankruptcy court explained on remand what it thought was necessary. That court’s final order of January 28, 2013, awarded about $90,000 in attorneys’ fees. The three-page order recounts that after receiving the remand, the bankruptcy court ordered OAK to file a supplement to its original fee application. What the supplement apparently did — the appellate record does not contain the supplement — was identify which billing entries from the original fee application OAK filed in April 2010, applied to which of the three categories of compensable work. For example, one of the appropriate categories for compensation was for the initial review of the issues and facts of the ease. In January 2013, the bankruptcy court pulled five specific entries out of what OAK filed as a supplement and found that they were not *218 related to initial case review. Each item of work occurred in March 2009. The dates and brief summaries in the bankruptcy court’s order correspond to entries in the 20-plus pages of billing records that OAK filed in April 2010. That original fee application is in the appellate record. This is not a determination based on new evidence. It is a decision based on old evidence, resubmitted by OAK.
In sum, the district court ordered the bankruptcy court to have OAK cull from its original fee application all entries for work that under Pro-Snax was not com-pensable. Then OAK resubmitted those remaining entries from the already-introduced billing records. The bankruptcy court could only ascertain the hours of work within those categories from existing evidence on the record. OAK certainly could not add to its billing for prior work not already included in its first fee application. The bankruptcy court determined, based on what the individual time entries from the original billings said about the work, the hours and fees owed to OAK under the district court’s determination of compensable categories of work.
Our question is whether OAK’s appeal from the district court’s order that interpreted Pro-Snax to deny compensation for certain categories of work may properly proceed even though the order from which the appeal was taken included a remand for the purposes I just described. Appeals from orders in bankruptcy cases under Section 158(d) are something of a special category in federal practice. This circuit once gave a useful description of finality for purposes of bankruptcy as being “a more flexible concept than in ordinary civil proceedings, [but] it is not an empty vessel into which the courts may pour whatever meaning they favor.” In re Lift & Equipment Serv., Inc., 816 F.2d 1013, 1016 (5th Cir.1987). I am trying to avoid treating Section 158(d) as such as vessel, but I do believe it will hold more than the majority is allowing.
Analyzing the reach of our jurisdiction under Section 158(d) after the enactment of the substantial amendments in 1984 to the Bankruptcy Code, this court summarized the history of appellate review of final bankruptcy court orders. Path-Science Laboratories, Inc. v. Greene Cnty. Hosp. (Matter of Greene Cnty. Hosp.), 835 F.2d 589, 591-93 (5th Cir.1988). After describing the complications of the prior practice, the court, in an opinion brimming with allusions to baseball,[1] stated that the district court’s order remanding a case to bankruptcy court would be appealable if two conditions were met:
For the order to be appealable, the game must really be over. To determine whether a remand by a district court really signals the end of the game, we must follow a two step inquiry. First, we must ask whether the order of the bankruptcy court itself is final in character, and second, if it is, we must ask if the remand by the district court requires extensive further proceedings. The answer to the first question must be in the affirmative while the answer to the second question must be in the negative.
Id. at 595 (citations omitted).
Whether the first factor is satisfied— was the bankruptcy court’s order under *219 review by the district court final in character — depends on whether it resolved “a discrete unit in the larger case.” Id. I expect the majority agrees that the first bankruptcy court order reviewed by the district court was final in character; it was the final establishment of the attorneys’ fees in this case. The second factor — does the remand by the district court require extensive additional proceedings — is the focus of this dissent.
In a case much discussed by the parties, we held that appellate review is precluded where “extensive further proceedings” before the bankruptcy court were required by the district court’s remand order. Pro-Snax, 157 F.3d at 420. The emphasis on the existence of “significant further proceedings” appears in many eases. See, e.g., In re Caddo Parish-Villas S., Ltd., 174 F.3d 624, 628 (5th Cir.1999). If a remand requires significant further proceedings, we label those proceedings as a “judicial function” and hold there is no jurisdiction for an appeal. See Cortez, 457 F.3d at 453. “However, if the remand involves only ministerial proceedings, such as the entry of an order by the bankruptcy court in accordance with the district court’s decision, then the order should be considered final.” Id.
Comparing these articulations, it might at first be thought that there is a large gap between what is appealable and what is not. On the one hand, only if significant additional proceedings would occur on remand is the district court order not ap-pealable. On the other, only if the remand is for something as pro forma as entry of judgment is the district court’s order ap-pealable. I believe that an elaboration of what our predecessor judges meant by these seemingly widely separated standards will better reveal the boundary between them.
One of our first cases after the 1984 amendments held that a district court order that remanded to a bankruptcy court is appealable “if all that remains to do on remand is a purely mechanical, computational, or in short [a] ‘ministerial’ task, whose performance is unlikely to affect the issue that the disappointed party wants to raise on appeal from the order of remand.” In re Lift & Equipment Serv., Inc., 816 F.2d at 1016 (quoting In re Fox, 762 F.2d 54, 55 (7th Cir.1985)). This elaboration on the meaning of “ministerial” task is quite helpful. That meaning was given life by our permitting the appeal to go forward despite the more than rubber-stamp nature of the remand:
While the record in the instant case is unclear as to the specific proceedings which will be required on remand, counsel agreed at oral argument that all requests for payment of administrative and legal expenses have already been approved and the disputed receivables have been accounted for and segregated. What remains is merely the bankruptcy court’s review of the scheduled expenses to determine which items should be deducted from the accounts receivable, rather than from the other assets. In the posture presented herein, this is no more than a mechanical and ministerial task. Appellate jurisdiction lies.
Id. Our situation is similar to the remand obligation in Lift & Equipment, where the appellate court had jurisdiction despite the remand to the bankruptcy judge to review expenses and make determinations as to specific items to deduct. One distinction is that in this prior case, there is no indication that the party seeking payment of the fees and expenses made a first pass at showing how the required deductions were to be made under the district court’s order. It quite reasonably might have, but maybe it did not. Certainly in Lift & Equipment the parties would have been *220 entitled to give their explanations of how the remand order operated on the evidence already submitted. Here, OAK was ordered to identify the relevant billing entries in the prior fee application. I do not see that the district court’s requiring OAK to make the initial culling of its prior bill to be significant. What is important is that on remand, the bankruptcy court had to take what was already in evidence and apply the district court’s definition of appropriate compensation to it.
The Seventh Circuit case on which we relied in Lift & Equipment also held it to be relevant whether the bankruptcy court’s remand tasks were likely to alter the appellate issues or result in new ones:
The likelihood that the proceedings on remand will moot, or at least alter, the issues that would be raised on an appeal from the liability determination, or will raise new issues for appeal and thus lead to multiple appeals if the order on liability is appealable, is too great to make an immediate appeal efficient.
Fox, 762 F.2d at 55.
It appears odd, at least to my eyes, that our jurisdiction-defining analysis is structured on relative likelihoods. I conclude, though, that such evaluations are central to the well-established analysis. This circuit’s precedents continuously refer to “significant” additional proceedings on remand as eliminating appellate jurisdiction, which is a modifier roughly quantifying the bankruptcy court’s remand tasks without stating absolute rules defining when appellate jurisdiction exists. See, e.g., Pro-Snax, 157 F.3d at 420.
One specific point made by my colleagues is that where a remand order “require[s] the bankruptcy court to perform judicial functions, such as additional fact-finding” it does not constitute a final order. Cortez, 457 F.3d at 453. Another precedent stated that a remand order is not final where “it necessitates further factual development or other significant judicial activity involving the exercise of considerable discretion.” Pro-Snax, 157 F.3d at 420. In my view, these different characterizations are summaries of a more involved distinction. I examine what was behind the statement that a remand mandating “additional fact-finding” is not ap-pealable. Cortez, 457 F.3d at 453 (citing Aegis Specialty Mktg., Inc. v. Ferlita (In re Aegis Specialty Mktg., Inc.), 68 F.3d 919, 921 (5th Cir.1995)). The Aegis case was not computational fact-finding. It involved whether we had jurisdiction over a district court order that had reversed the bankruptcy court’s confirmation of a Chapter 11 plan and remanded for an evidentia-ry hearing on plan confirmability. Aegis Specialty Mktg., 68 F.3d at 920-21. Remembering that the ultimate, if subjective, question is whether “significant” proceedings will occur on remand, interpreting Cortez to say that any fact-finding on remand destroys appellate jurisdiction is incorrect. Additional fact-finding on remand that bars appellate jurisdiction must be more than a computational task “unlikely to affect the issue that the disappointed party wants to raise on appeal from the order of remand.” In re Lift & Equipment Serv., Inc., 816 F.2d at 1016. Computational tasks are by definition a form of fact-finding. Thus, we cannot determine our jurisdiction simply by noting the remand requires facts to be found.
The remand in the present ease requires more than a mechanical entry of judgment by the bankruptcy court, but it also involves only mechanical and computational tasks that are “unlikely to affect the issue that the disappointed party wants to raise on appeal.” See id. The likelihood at the time of the remand that there would not be a post-remand appeal is supported now by the absence of any such appeal. This is *221 not to say that when the time to appeal the ruling on remand has expired prior to our deciding the jurisdiction question, we are always justified in accepting the appeal of the remainder of the district court’s order. Instead, I suggest that, after looking at the totality of the circumstances in the current case, it is reasonable to conclude that the remand was limited to computational tasks, was unlikely to be appealed, and would not affect the issues on this appeal.
A second look at the remand order here would be useful. The district court reversed the bankruptcy court’s fee award of $60,000 and remanded for a recalculation. It had determined that OAK was entitled to attorney’s fees for three categories of compensable services. The remand was to allow calculation of the award based on those categories. As the court found no “efficient way for the court to identify” the hours spent by OAK on these three categories, it required calculation of the award on remand take place “after OAK identifies the number of hours to be allocated to the three categories.” After looking at OAK’s lengthy April 2010 fee application, I certainly agree that the eliminating of time entries would require some work. But the work is, to use the relevant word, mechanical. The court remanded to the bankruptcy court for it to rule within these tightly defined parameters. In short, the district court required a calculation of fees, based on evidence of hours already in the record, that were allocable to three specific categories of service determined to be compen-sable by the district court. In my opinion, the bankruptcy court’s obligations on remand do not rise to the level of significant further proceedings.
I find the caselaw identified by the majority to be entirely consistent with these views. In one of our decisions declining jurisdiction, the district court’s remand required the bankruptcy court to determine “whether the award [of attorney’s fees] is warranted and, if so, whether the amounts requested [] for attorney’s fees and expenses are reasonable and necessary.” In re Pratt, 524 F.3d 580, 585 (5th Cir.2008). The remand order required more evidence to be taken, with the right of those opposing the fee “to examine, question, or otherwise argue against the claimed fees and expenses.” Id. This remand required the performance of judicial functions. Id. Pratt fits well within our settled principle that jurisdiction is absent where significant additional proceedings are required in the bankruptcy court, and also reveals why appeal from the remand order here does not run afoul of those same principles.
Quite differently, the remand here instructed the bankruptcy court to “determine a reasonable fee, after OAK identifies the number of hours to be allocated to the three categories of compensable services.” The remand did not require the bankruptcy court to determine whether fees were warranted. Unlike Pratt, where significant adversarial proceedings on remand were contemplated, OAK was to identify the hours allocated to each of three categories; that identification was limited to the already-existing record; the bankruptcy judge was directed to use the resulting calculation to award fees to OAK in accordance with the district court’s decision.
The majority also discusses another line of cases advising that “we must be wary of accepting jurisdiction where doing so may result in future piecemeal appeals.” Cad-do Parish-Villas, 174 F.3d at 629. That concern is not a separate element of our jurisdiction analysis, but instead it identifies that “the purpose of Section 158(d)’s finality requirement ‘is to avoid piecemeal appeals.’ ” Id. (citation omitted, emphasis added). In Caddo Parish-Villas, we declined jurisdiction where upholding a district court’s order on appeal would not *222 dispose of an indemnification issue that had been remanded to the bankruptcy court and could lead to another appeal. Here, OAK’s appeal arises from one issue, the district court’s determination that fees were compensable in only three categories. The district court’s remand was for calculation of fees in those categories based on existing evidence. An appeal from the bankruptcy court’s decision was unlikely. The bankruptcy court decision also would not impact OAK’s appeal concerning the applicability and continued validity of Pro-Snax in determining whether OAK’s services were compensable.
The present appeal might moot the bankruptcy court’s fee calculation on remand, but the action taken by the bankruptcy court as a result of the remand would not moot the issue on our appeal. Avoiding superfluous remands is not the purpose of Section 158(d), though we certainly do not suggest bankruptcy judges should be given such remands. The policy of avoiding piecemeal appeals is fully satisfied by allowing this appeal.
I acknowledge that terms like “significant” proceedings, mere “computational” tasks, and “likelihood” of future appeals, are inherently flexible terms. Subjective judgments are involved despite that the goal is a decision about jurisdiction. My judgment differs from that of the majority. I am concerned that refusing to hear this appeal undermines the long-recognized, salutary purpose of allowing appeals on discrete issues well before a final order in bankruptcy that would meet 28 U.S.C. § 1291 standards.
The majority’s denial of jurisdiction forecloses access to appellate review when it should be available. Respectfully, I dissent.

. Judge Irving Goldberg swung for the fences when he used the national pastime as a metaphor for understanding bankruptcy appellate jurisdiction. "A paradox of appellate jurisdiction is that the season begins only after the game has ended. In baseball, it is easy to tell when the game is over. In bankruptcy, Title 11 of the United States Code not only changes the rules of the game, it reshapes the concept of game.” Matter of Greene Cnty., Hosp., 835 F.2d at 589 (footnotes omitted).